B. F. PIEART, Administrator, Appellee, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

1. **Practice:** MOTIONS FOR JUDGMENT AND FOR NEW TRIAL: TIME FOR FILING. Within the time allowed by law, or that may be stipulated between the parties, a party to a cause may file a motion for judgment, notwithstanding the verdict, and also a motion for a new trial; if the former is overruled, the motion for a new trial may be insisted upon, and, if both motions are overruled, the moving party is entitled upon appeal to a hearing upon both.

2. **Negligence:** PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS TO JURY. A person seeking to recover for an injury sustained through the alleged negligence of another will not be excused for his own negligent act contributing thereto, although he had good ground for believing, as a reasonably prudent man, and did believe, that such act was not imprudent.

3. ———: MASTER AND SERVANT: SAFETY OF APPLIANCES: COMPLAINT BY EMPLOYE. The plaintiff's intestate was employed as a switchman in the defendant's yards. Until within a week of the time that the deceased was injured the defendant had furnished for the switching done in its yards a road-engine with run-boards bolted to the base of the pilot, upon which the switchman might step and stand when the engine was in motion, and from which to make couplings when necessary. This engine becoming out of repair, it was sent away for repairs, and another road-engine without run-boards was furnished. To the use of this engine without run-boards the deceased objected to the yard-master, who had no authority to supply the run-boards, but whose duty it was to communicate the objection to the train-master. This was not done, however, and upon the assurance of the yard-master that the engine would only be there a few days, and that if the old engine

was not repaired soon he would have a new one, the deceased
continued in his employment. *Held,* that any acts or expressions
by which the deceased gave the proper agent of the defendant to
understand that he was unwilling to continue in the employment
without run-boards on the engine was a sufficient complaint;
that the complaint was properly made to the yard-master, and
that the court properly left it to the jury to determine, whether
the defendant was negligent in not providing an engine with run-
boards, whether the deceased made a sufficient complaint thereof,
and whether he was induced to continue in the employment by
the assurances of the defendant that a proper engine would be
furnished.

4. ————: CONTRIBUTORY NEGLIGENCE: ACTS IN AVOIDANCE OF
ANOTHER'S NEGLIGENCE. The deceased was injured through an
engine passing over him while in the act of detaching a car from
the engine while in motion; and there being evidence tending to
show that the engine and car were moved at the signal of the
deceased, and that they could have been detached either before or
after being moved, with less peril than while in motion, *held,* that
the instructions given to the jury upon the question whether the
deceased was negligent in the act of uncoupling were not suffi-
ciently specific, and that instructions asked by the defendant
directing their inquiry to the presence or absence of an opportu-
nity to perform that act at another time or in a different manner
with less danger, ought to have been given.

5. ————: ————: VERDICT. A special finding of the jury, that
the deceased knew of the absence of run-boards, that the danger
was unusual, and that he exposed himself to it, *held,* not in con-
flict with a general verdict in favor of his estate, in the absence
of any finding that there was not a promise by the defendant to
the deceased to supply a proper engine.

*Appeal from Cass District Court.*—HON. H. E.
DEEMER, Judge.

WEDNESDAY, FEBRUARY 4, 1891.

ACTION to recover damages because of alleged neg-
ligence of the defendant's agents and employes, causing
the death of plaintiff's intestate without fault or negli-
gence on the part of the deceased. The answer was a
general denial. There was a trial by jury, a return
of special findings, and a general verdict for the
plaintiff for eighty-eight hundred dollars. The defend-
ant's motion for judgment on the special verdict,

and also its motion for a new trial, were overruled. The defendant appeals. Other facts necessary to be considered appear in the opinion.—*Reversed.*

*T. S. Wright, Cummins & Wright* and *R. G. Phelps,* for appellants: The question was, was the deceased in the exercise of proper care? The jury were told they could find he was in the exercise of proper care, if he believed he was in the exercise of proper care. This was manifest error. *Muldowney v. Railroad,* 36 Iowa, 462; *Deeds v. Railroad,* 74 Iowa, 154. The continuance of the deceased in the employ of the defendant, after knowledge of the defect in the engine, imposed upon plaintiff the burden of proving that deceased objected and was promised an amendment. *Coats v. Railroad,* 62 Iowa, 486. The employe assumes the risk, as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. *Indianapolis & St. L. Ry. Co. v. Watson,* 14 N. E. Rep. 721; *Clarke v. Holmes,* 7 Hurl & N. 937; *Smith v. Dowell,* 3 F. & F. 238: Whart. Neg., sec. 221; *Wilson v. Railroad,* 31 Am. & Eng. R. R. Cases, 244. Between the time of the alleged promise and the accident, there was no time to make any repair, and the defect and danger being evident, deceased could not have relied upon the promise. *Stephenson v. Duncan,* 41 N. W. Rep. (Wis.) 337. The conversation relied on contains no such request to remain; nor order to go on with the work. An order would not excuse the deceased. *Mayes v. Railroad,* 63 Iowa, 562; *P. C. & St. L. Ry. Co. v. Adams,* 105 Ind. 151; *Olson v. McMullen,* 34 Minn. 94; *Galveston Ry. Co. v. Tempe,* 11 Am. & Eng. R. R. Cases, 201; *Texas Pac. Ry. Co. v. Bradford,* 66 Tex. 732; *Moulton v. Gage,* 138 Mass. 390; *Hathaway v. Railroad,* 51 Mich. 253; *English v. Railroad,* 24 Fed. Rep. 906; *Youll v. Railroad,* 66 Iowa, 346. There was no competent evidence of a promise that would relieve deceased of the doctrine of waiver. There must be a promise. A mere complaint is not enough. The promise must be authoritative. *Richardson v. Cooper,* 88

Ill. 270, 274; *Stroble v. Railroad,* 70 Iowa, 555; *Bush-nell v. Railroad,* 29 N. W. Rep. 753; *Baldwin v. Railroad,* 29 N. W. Rep. 5; *Little Rock Ry. Co. v. Miles,* 13 Am. & Eng. R. R. Cases, 10; *Wakefield v. Railroad,* 117 Mass. 544; *City of LaFayette v. James,* 92 Ind. 240; *Tucker v. Railroad,* 54 Mo. 177; *Brown v. Railroad,* 67 Mo. 412; *Mayberry v. Railroad,* 75 Mo. 492; *Marquette Ry. Co. v. Taft,* 28 Mich. 289; *Toledo Ry. Co. v. Rodriguer,* 47 Ill. 188; *Union Pac. Ry. Co. v. Springsteen,* 21 Pac. Rep. 774; *Gildersleeve v. Railroad,* 33 Mich. 133; *Volkman v. Railroad,* 35 Am. & Eng. R. R. Cases, 204. If deceased could have avoided the risk by uncoupling before they started or after they stopped, there can be no recovery in this action. It was the duty of the deceased to have adopted the safer course, and, not having done so, there can be no recovery in this action. *Lane v. Railroad,* 69 Iowa, 443; *Wilson v. Railroad, supra; N. Y., L. E. & W. Ry. Co. v. Lyons,* 13 Atl. Rep. 205; *C. & N. W. Ry. Co. v. Donahoe,* 75 Ill. 106; *Foster v. Railroad,* 84 Ill. 164; *Riley v. Railroad,* 27 W. Va. 145. To handle cars or machinery that are temporarily out of repair, is a hazard to which an employe may be subjected at any time. The existence of such peril while such car is at the place of repair implies no negligence upon the part of the company. *Fraker v. St. P., M. & N. Co.,* 15 Am. & Eng. R. R. Cases, 256; *Yeaton v. Railroad,* 15 Am. & Eng. R. R. Cases, 253. The verdict is out of all proportion to the money value of the man's life. *Rose v. Railroad,* 39 Iowa, 246; *Collins v. City of Council Bluffs,* 35 Iowa, 432. The position that we have no standing in this court upon our motion for new trial, because by our motion for judgment *non obstante* we have waived it, is illogical. There is no inconsistency between the two motions. *Baird v. Railroad,* 55 Iowa, 121; *Baird v. Railroad,* 61 Iowa, 359; *Williams v. Frick,* 71 Iowa, 362. A motion for new trial is not necessary in order to review any judgment or order of the court below. Code, sec. 3169; *Beems v. Railroad,* 58 Iowa, 150; *Coffin v. City,* 26

Iowa, 515; *Presnall v. Herbert*, 34 Iowa, 539; *Brown v. Rose*, 55 Iowa, 734.

*L. L. De Lano* and *F. B. Huckstep*, for appellee: The defendant did not have the right to insist upon its motion for a new trial after electing to stand upon its motion for a judgment upon the special verdict. *Nixon v. Downey & Wolverton*, 49 Iowa, 166. The deceased was not necessarily guilty of negligence because he did not avoid a known danger. *Perigo v. Railroad*, 55 Iowa, 326; *Lansing v. Railroad*, 49 N. Y. 521; *Belair v. Railroad*, 43 Iowa, 662; *Crutchfield v. Railroad*, 78 N. C. 300; *Colorado Ry. Co. v. Ogden*, 3 Colo. 499; *Snow v. Railroad*, 8 Allen, 441; *Patterson v. Railroad*, 76 Pa. St. 389; *Green v. Railroad*, 31 Minn. 248. Knowledge of a defect, without complaint or promise to repair, does not deprive the servant of his right of action unless a man of common prudence would not use it because immediate injury would be threatened by its use. *Huhn v. Railroad*, 4 S. W. Rep. 937; *Hawley v. Railroad*, 82 N. Y. 370; *East Tenn., V. & G. Ry. Co. v. Duffield*, 47 Am. Rep. 319; *Flynn v. Railroad*, 98 Mo. 195. The tenth instruction which is complained of is in nowise similar to the one given in *Muldowney v. Railroad*, 36 Iowa, 462. Nor does this instruction proceed upon the theory of the lower court in *Deeds v. Railroad*, 74 Iowa, 154. Here the jury was told that the belief of the decedent and his acts induced thereby must be either prudent or imprudent, accordingly as a reasonably prudent man would have believed and acted under like circumstances. The rule is, that if the deceased could reasonably expect to use the engine with care and diligence without sustaining injury he could rely upon the promise of repair. *Conroy v. Iron Works*, 62 Mo. 35. The law does not require an absolute promise to repair the defect. The defendant would be liable if it had induced the deceased to believe that it was the intention to remedy the defect. The assumption of the risk only follows as a result of the servant's remaining after knowledge of the defect where

he continues without objection, protest or complaint on his part; and there is no waiver if he has given notice that the defect exists, and that he desires its removal. *Thorpe v. Railroad*, 2 S. W. Rep. 3; *Snow v. Railroad*, 90 Mass. 44; *Conroy v. Iron Works*, 62 Mo. 35; *Sioux City & P. Ry. Co. v. Finlayson*, 20 N. W. Rep. 860; *Keegan v. Railroad*, 8 N. Y. 175; *Patterson v. Railroad*, 76 Pa. St. 389; *Colorado Ry. Co. v. Ogden*, 3 Colo. 499; *Ford v. Railroad*, 110 Mass. 240. A promise to repair is not necessary if protest has been made in such a way as to induce confidence that the defect would be remedied. Wharton on Neg., sec. 221; Shearman & Redfield on. Neg., sec. 96; *Kroy v. Railroad*, 32 Iowa, 357; *Greenleaf v. Railroad*, 33 Iowa, 52; *Perigo v: Railroad*, 55 Iowa, 326; *Green v. Railroad*, 31 Minn. 248; 2 Thompson on Neg., sec. 16, p. 1009. An implied promise to remedy the defect is sufficient. *Ind. & St. L. Ry. Co. v. Watson*, 14 N. E. Rep. 725. It was the duty of the defendant to provide safe machinery in the first instance, and keep it in good repair. *Flike v. Railroad*, 53 N. Y. 549; *Corcoran v. Holbrook*, 59 N. 517; 2 Thompson on Neg., sec. 11, p. 983; *Coombs v. Cordage Co.*, 102 Mass. 572. The defendant was negligent in not supplying an engine with foot-boards. *Frazier v. Railroad*, 38 Pa. St. 104; *Railroad v. Barber*, 5 Ohio St. 541; 2 Thompson on Neg., sec. 2, p. 970; sec. 12, p. 992. Having failed in the first instance to furnish a reasonably safe appliance, it was not entitled to notice of the defect, as it had equal notice with the deceased. Lawson's Rem. & Prac., sec. 313; Wood's Mas. & Serv., sec. 326; *Ind. & St. L. Ry. Co. v. Estes*, 96 Ill. 470; *Hullehan v. Railroad*, 32 N. W. Rep. 529; *Konger v. Railroad*, 11 N. E. Rep. 957. Notice to one whose duty it is to report to another, who is charged with the duty of making repair, is notice to the company. *Brabbits v. Railroad*, 38 Wis. 289; *Hannibal & St. J. Ry. Co. v. Fox*, 3 Pac. Rep. 320. Cain's negligence in failing to report the defective condition of the engine is the negligence of the defendant, and the defendant is liable to the servant under Cain if,

injured because of such negligence. *Little Miami Ry. Co. v. Stevens*, 20 Ohio St. 416 ; *C. C. & C. Ry. Co. v. Keary*, 3 Ohio St. 201 ; 2 Thompson on Neg., sec. 10, p. 981 ; *Cayzar v. Taylor*, 76 Mass. 274 ; *Booth v. Railroad*, 73 N. Y. 38. Cain was not the fellow-servant of the decedent, but was a vice-principal. *Louisville Ry. Co. v. Bowler*, 9 Heisk. 866 ; *Grizzle v. Frost*, 3 Fost. & F. 622 ; *Dowling v. Allen*, 41 Am. Rep. 298 ; *Railroad v. Ross*, 5 Sup. Ct. Rep. 184 ; *Palmer v. Railroad*, 13 Pac. Rep. 25 ; *Mason v. Machine Works*, 28 Fed. Rep. 228 ; *Wabash & St. L. Ry. Co. v. Hawk*, 12 N. E. Rep. 253 ; *Chicago & St. P. Ry. Co. v. Lundstrum*, 20 N. W. Rep. 198 ; *Theleman v. Moeller*, 34 N. W. Rep. 765 ; *Braun v. Railroad*, 53 Iowa, 595 ; *Reddon v. Railroad*, 15 Pac. Rep. 262 ; *East Tenn., V. & G. Ry. Co. v. DeArmond*, 6 S. W. Rep. 600 ; *Tabler v. Railroad*, 5 S. W. Rep. 810 ; *Forians v. Railroad*, 4 S. E. Rep. 339 ; *C. & A. Ry. Co. v. May*, 15 Am. & Eng. R. R. Cases, 320 ; *Gilmore v. Railroad*, 15 Am. & Eng. R. R. Cases, 304 ; *King v. Railroad*, 14 Fed. Rep. 277 ; *Hough v. Railroad*, 100 U. S. 313 ; *Railroad v. Fort*, 17 Wall. 557 ; *Dillon v. Railroad*, 3 Dill. 319 ; *Ford v. Railroad*, 110 Mass. 241 ; *Gibson v. Railroad*, 46 Mo. 163. If notice to Cain was notice to the company, a promise to repair was a promise by the company, under the doctrine announced in *Parody v. Railroad*, 15 Fed. Rep. 205 ; *Herbert v. Railroad*, 13 N. W. Rep. 349 ; *Macy v. Railroad*, 28 N. W. Rep. 249 ; *Tierney v. Railroad*, 23 N. W. Rep. 229 ; *Kelley v. Tel. Co.*, 25 N. W. Rep. 706 ; *Fay v. Railroad*, 15 N. W. Rep. 241 ; *Thompson v. Drymala*, 1 N. W. Rep. 255 ; *St. L. & St. F. Ry. Co. v. Weaver*, 11 Pac. Rep. 408 ; *Bowers v. Railroad*, 7 Pac. Rep. 251 ; *Cunningham v. Railroad*, 7 Pac. Rep. 795 ; *McLeod v. Ginther*, 8 Am. & Eng. R. R. Cases, 162 ; *Smith v. Railroad*, 17 Am. & Eng. R. R. Cases, 561 ; *C. & N. W. Ry Co. v. Bayfield*, 37 Mich. 205 ; *U. P. Ry. Co. v. Fort*, 17 Wall. 553 ; *Railroad v. Lavalley*, 36 Ohio St. 221. If the appliances became defective and out of repair, and the deceased made complaint, and he was persuaded to remain in the service

by promises of repair, he did not assume the risks inci-
dent to such defective appliances unless he remained an
unreasonable length of time after the promise to repair
had been made. *Lyberg v. Railroad*, 38 N. W. Rep.
632; *Mfg. Co. v. Morrissey*, 40 Ohio St. 148; *A., T. &
S. F. Ry. Co. v. Sadler*, 16 Pac. Rep. 46; *Lanning v.
Railroad*, 49 N. Y. 521; *Belair v. Railroad*, 43 Iowa,
662; 2 Thompson on Neg., pp. 953, 980, 985, 1001.

GIVEN, J.—The following statement of the facts,
with such as are hereinafter mentioned, will be suffi-
cient to an understanding of the questions discussed.
They appear without question except in two or three
respects which will be mentioned. The plaintiff's
intestate, Frank Pieart, aged twenty-two, had been in
the employ of the defendant as a switchman at its
yards in Atlantic for about one year before his death,
at a salary of forty dollars per month, and for several
years prior thereto in other capacities. As such switch-
man it was his duty to assist in placing cars into trains
ready to be taken out on the road, and in moving cars
from place to place in the yard, as might be necessary.
For this work an engine in charge of an engineer and
fireman, with two switchmen, the four constituting the
crew, was provided. This work was performed under
the orders of Frank Cain, as yard-master, who gave
directions as to what cars were to be moved, and where
to, but did not direct as to the immediate details of
their movement. It was the duty of the deceased, as
switchman, to couple and uncouple cars to and from
each other, and the engine, when necessary in switch-
ing, and to give signals to the engineer when to move
and to stop the engine, which signals it was the duty
of the engineer to obey. Up to within one week prior
to February 20, 1885, defendant had furnished, for that
work, a road engine, number 198, with run-boards bolted
to the base of the pilot or cow-catcher, the purpose of
which was that the switchmen might step and stand
thereon when the engine was in motion, and thereby be
carried from point to point, and from which to make
couplings when necessary. This engine became out of

repair. The run-boards were detached by deceased and his fellow-switchman Adams, and the engine was sent away for repairs. Another road-engine was furnished for use in its place. This engine had no run-boards, and the space between the bars of the pilot had been filled in with strips of timber for winter use, as is customary, for the purpose of preventing snow from passing between the bars. On February 20, 1885, the deceased, with the others of the crew, was engaged in switching cars. A car was attached in front of the engine, and standing still on the track. The movement to be made was to move the engine forward, so as to shove the car in onto a sidetrack, where it was to remain, far enough to clear for the passage of cars on the parallel track. The deceased signaled the engineer to move the engine forward, and, after it was in motion, stepped between the car and engine to draw the pin that coupled them together, and while attempting to do so, because of the presence of snow and ice on the ground, he slipped and fell and was run over by the moving engine, and so injured that he soon after died. As to these facts there is no conflict. When the change of engines was made, and again on the morning of the day on which the deceased was injured, and shortly before his injury, he had conversation with the yardmaster Cain about using the engine without run-boards. There is a contention as to these conversations which will be hereafter noticed, and also a contention as to whether the deceased had been informed of a certain rule published by the defendant on its time-card, and introduced in evidence.

I. After the verdict it was stipulated that appellants have five days in which to file a motion for judgment in arrest of judgment, and for new trial, which motions were filed within that time. On the day of the hearing the appellee moved to strike the motion for new trial because the defendant had filed the motion for judgment, and insisted thereon. The judgment entry shows that the cause came on for hearing on these motions,

1. PRACTICE: motions for judgment and for new trial: time for filing.

and by agreement they were all fully submitted and taken under advisement, and afterwards the defendant's motions were overruled. The appellee insists that the appellant has no standing in this court upon its motion for new trial ; that, by insisting on the motion for judgment, the motion for new trial was waived, which waiver was equivalent to withdrawing it from the files ; and that, at the time of the submission, it was too late to file a motion for new trial. *Nixon v. Downey*, 49 Iowa, 166, is relied upon. Much that is said in that case is clearly inapplicable to the facts of this. In that case defendant moved for judgment on the special findings, and also filed a motion for new trial, "to be ruled on in case the motion for judgment on the special findings should be overruled." The defendant's motion for judgment was sustained, and the plaintiff appealed. The ruling of the court in sustaining the defendant's motion and rendering judgment in his favor on the special findings was reversed, and the question arose whether the case should be remanded for a ruling upon the motion for a new trial, or for judgment in favor of plaintiff on the general verdict. In this case no question can arise as to how it may be remanded. The defendant's motions were filed within the time agreed upon, and both were considered and overruled. It is not questioned but that a party may follow a motion for judgment on special findings with a motion in arrest, and for new trial, if the former is overruled ; nor, indeed, is it questioned but that he may file both motions at the same time, the one for new trial to be considered if the former is overruled. The contention is that pending the former the latter stands as waived as though it were not on file, and, if the former motion is not ruled upon within the time allowed for filing a motion for new trial, it cannot thereafter be filed. To so hold would deny to a party the right to move for a new trial when the business of the court prevented ruling upon his motion for judgment within the time fixed for filing such motions. Certainly it is not the design of the law to deprive a party of a right to a hearing upon both

motions. It would seem to be a sufficient answer to appellee's contention that these motions were filed and submitted under stipulations that prevented a ruling upon the former within the time allowed by statute for the filing of the latter. To determine when either motion becomes a waiver of the other, we must look to the facts. In *Nixon v. Downey, supra*, the motion for new trial was waived, because the defendant had obtained a favorable ruling upon his motion for judgment, and, therefore, did not and could not press his motion for new trial; he thereby put it out of the power of the court to rule upon that motion. In *Williams v. Frick*, 71 Iowa, 362, the defendant moved for judgment on the special findings, which motion was overruled, and he then moved for new trial, which was sustained. "The error assigned and relied on is that the court erred in overruling the first motion. Conceding this, we think the defendant waived the error by moving to set aside the general verdict, asking a new trial, and obtaining it." We are of the opinion that, within the time allowed, a party may file his motion for judgment, and also his motion for a new trial, to be ruled upon in case the former is overruled. In such case, if the motion for judgment is sustained, that is a waiver of the motion for new trial; but, if the motion for judgment is overruled, the motion for new trial may be insisted upon, and, if sustained, that is a waiver of any errors in overruling the motion for judgment; but, if both motions are overruled, the moving party has a right to be heard as to both, on appeal.

II. In an instruction with respect to the duty of the deceased as to care in detaching the car and engine,

2. NEGLIGENCE: personal injury: contributory negligence: instructions to jury.

and following what is conceded to be a correct statement of the law, the instruction continues: "But, on the contrary, if you find that the deceased did not believe it was imprudent for him to do uncoupling in the manner that he did, and had good ground, as a reasonably prudent man, for believing that he could do the uncoupling without injury to himself, then the deceased would not

necessarily be precluded, under such circumstances." The contention as to this part of the instruction is fully answered in *Muldowney v. Railroad*, 36 Iowa, 462, wherein a similar instruction was held to be erroneous. We discover no distinction between the cases as to this point, and, following that, must hold that it was error to give the part of the instruction quoted above.

III. Of the several charges of negligence made against the defendant, the only one submitted to the jury was the charge that defendant was negligent in furnishing an engine to do the switching in that yard, which was not provided with a foot or run-board around the pilot. It is not questioned but that the deceased knew that there was no such board on that engine, but the plaintiff claims that the deceased protested against using the engine without such board, and that the agent of the defendant promised that that engine should soon be removed, and that the deceased would not be required to work but a short time with it, and, by promises and assurances given, induced him to continue in his position as switchman. The appellant contends that there is no evidence of such promise, and that the court erred in submitting that inquiry to the jury. Numerous authorities are cited to show that there must have been an express or implied promise, and, upon the other hand, that a mere assurance upon which the employe relied is sufficient. If, upon objection to the employer or one authorized to act for him, the employe is given to understand that the defect will be remedied, he has a right to act upon that assurance.

This brings us to inquire whether complaint was made to one having authority in such matters. The two conversations relied upon were with Cain, the yard-master, under whose orders the deceased performed his duties as switchman. It appears that the yard-master had no authority to direct repairs on the engine, but, if an engine was furnished him lacking some appliances necessary for switching, it was his duty to report to the trainmaster, who would determine the advisability of

furnishing whatever was required. We think under this showing the yard-master was the proper person to whom deceased should complain. This case differs from *Bushnell v. Railroad*, 69 Iowa, 620, cited by counsel. The question there was as to the right of the agent to make a certain contract, and it was held that he must have been expressly so authorized. The defendant's business is transacted by many officers, agents and servants of different grades. It being the duty of the yard-master to report such complaints to another, the complaint was properly made to him, though he may not have had authority to remedy the difficulty complained of.

The testimony relied upon as showing a protest by, and a promise or assurance to, the deceased is, in substance, as follows: At the time the engines were changed, the deceased raised objection to working with the engine without foot-boards on. Shields, the engineer, said: "The engine would not be there over one week, and he did not like to have foot-boards put on his engine for so short a time; as we would have to take some of the boards from between the pilot bars, in order to put the boards on, and would also have to bore holes through the bottom of the pilot, and he preferred not to have that done, as he had the pilot all fixed up for winter." "Cain said he would not bother to put the boards on at that time, as the engine would only be there a few days, and he would not bother with it." Switchman Adams, who relates this conversation, also states that he and the deceased had taken the boards from engine 198, and expected to put them on 208, and did not do so because of the objections of the engineer, and the advice of Cain. On the morning of the day on which deceased was injured, he stated, in the presence of Cain, that somebody had told him that the repairs had not commenced on the engine taken to Stuart; that he hated to work around that engine without running-boards; and that he had a good mind to put one on himself; when Cain asked, "How would you do it?" and his answer was: "I would spike it on if there was

no other way to get it." "Cain rather laughed, and said in other yards they did not have running-boards on engines, or that he had worked in them where they did not have running-boards; that if the old engine was not repaired soon he would have a new one or a permanent one there." This last conversation occurred one week after the change of engines.

In contracting employment the defendant assumed to exercise ordinary care for the safety of the deceased, and he assumed all the ordinary dangers of the employment. If ordinary care required that the defendant provide an engine with running-boards, then it was negligence not to do so. If the deceased knew there were no run-boards on the engine, and continued in the employment without complaint, or if, having complained, he continued in the employment without assurances from which he had a right to believe that run-boards would be furnished, then he waived the negligence, and assumed the risks incident to the work without run-boards. If, upon complaint, he was given assurance from which he had a right to believe that run-boards would be furnished, and by such assurance was induced to and did continue in the service, then he did not waive the negligence, and the defendant assumed the hazards incident to the absence of run-boards. No particular form of words is required to constitute a complaint or assurance. If, by any acts or expressions, the deceased gave the proper agent of the defendant to know that he was unwilling to continue in the employment without running-boards on the engine, that was a sufficient complaint; and, if by any acts or expressions the agent gave the deceased reason to believe that running-boards would be furnished, that was a sufficient assurance or promise. There was clearly no assurance or promise in these conversations that run-boards would be furnished so long as the engine then in use should remain in that service, but the conversations did tend to show an assurance that an engine would be furnished for the work with run-boards at

some time in the future. If such assurance was made, and deceased was induced thereby to continue in the employment, then, as we have seen, the defendant assumed the risks incident to the performance of the work without running-boards until such boards should be furnished. The foregoing views of the law are so uniformly sustained by the authorities that we do not deem it necessary to make citations. We think there was no error in submitting the inquiry as to the complaint and promise or assurance to the consideration of the jury, nor in giving or refusing instructions with reference thereto.

IV. The defendant complains of the refusal to give the following instructions: "If you believe from the evidence that, in view of the condition of the track, and the absence of foot-boards from the pilot of the engine, there was a risk to the deceased in uncoupling the engine and car while in motion that he could have avoided by uncoupling before they started or after they stopped, then there can be no recovery in this action." "If you believe from the evidence that deceased could have uncoupled the engine from the car after throwing the switch before the engine and car started west, or could have uncoupled them after they had gone over the switch and stopped, and that, in view of the condition of the track, and the absence of a foot-board from the pilot of the engine, this course was safer than to attempt to uncouple them while moving, then, under the rule introduced in evidence, it was the duty of deceased to have adopted the safer course, and, not having done so, there can be no recovery in this action."

One of the important issues to be decided by the jury was whether the deceased was guilty of contributory negligence in attempting to detach the engine and car when and as he did. The presence or absence of opportunity to do the work at a different time or in a different way with greater safety was an important element of this inquiry. There is testimony tending to show that the engine and car were moved at the

4. ——: contributory negligence: acts in avoidance of another's negligence.

signal of the deceased; that they could have been detached either before or after being moved, with at least much less peril than while in motion. All facts immediately attending the uncoupling were important to be considered in determining this question of contributory negligence. It is contended that the substance of the instructions asked is fully covered by those given. The instructions given direct the inquiry to the act of making the uncoupling, but do not refer to the presence or absence of opportunity to make it at another time or in a different manner with less danger. The instruction given does direct the jury that they should consider "all other facts and circumstances throwing light thereon;" but upon so important an inquiry they should have been more specifically directed, especially when instructions to that effect were asked. If the reference to the rule introduced in evidence is a reason why the last instruction asked should not have been given, still, we think, it was error not to have directed the jury more definitely in respect of this inquiry. The rule being in evidence, and it being for the jury to determine whether it had come to the knowledge of the deceased, we think the instruction should have been given as asked.

V. Exceptions were taken to other instructions given and to overruling the defendant's motion to direct a verdict. It is sufficient to say of these exceptions that they rest mainly upon questions already considered, and need not be discussed at length. The instruction with respect to the defendant's rule 24 is in accordance with the correct construction of that rule. It certainly was not intended by it to withdraw all discretion from employes in the discharge of their duties. As we have seen, there was evidence tending to show an assurance to deceased that run-boards would be furnished, and such evidence as to care on the part of the deceased that the question was properly submitted to the jury. There was no error in overruling defendant's motion to direct a verdict. The defendant claims that the special findings show that

deceased was violating the rule when he did not need to; that he knew of the defect, and knew the danger was unusual, and exposed himself thereto; and that there was no promise to repair upon which he ought to have relied, and, hence, the motion for judgment thereon should have been sustained. The jury failed to find from the evidence that deceased knew of the rule. If he did not know of it, then he was not bound by it, and the mere fact of violating it would not entitle the defendant to judgment. That the deceased knew of the absence of run-boards, that the danger was unusual, and that he exposed himself to it, is not necessarily in conflict with the general verdict; for, as we have seen, the defendant may be liable though all these facts exist. The jury did not find specially whether there was a promise to repair or not, but we may infer from their general verdict that they did find that there was a promise to repair, upon which the deceased had a right to rely. We see no error in overruling the motion for judgment on special findings. We may add that for the errors already pointed out, we think the court should have sustained defendant's motion for a new trial.

It follows from the conclusions reached that the judgment of the district court must be REVERSED.