The Gulf, Colorado & Santa Fe Railway Company v. Green
Brentford.

No. 3042.

1.  **Contributory Negligence—Master's Promise.**—We do not understand that it has ever been held that the promise of the master to repair a defective machine or implement used in his business and known by both to be dangerous will relieve the servant from the ordinary result of contributory negligence on his part, though cases may be found in which stress was laid on the fact that such a promise was made.

2.  **Promise of Master to Repair, etc.** — Under a promise to restore defective machinery necessary to the safety of the employes in their work, and a request that the servant go on with the work, the servant doubtless is given ground to believe that a defect will be repaired before he will again be called upon to place himself in danger from it; and the fact that he may be subsequently injured through the defect ought not to defeat his right to recover if he was ignorant of the continued existence of the defect at the time the injury occurred.

3.  **Defective Appliances — Risks of Employe.** — Where there is no express promise to repair or request to continue in the service the employe assumes the risks incident to a service conducted with machinery, implements, or appliances known by himself as well as the employer to be defective and dangerous. The rule should also apply to an implied promise to repair, etc.

4.  **Same—Charge.**—The charge making the liability of the defendant company depend upon the promise of *the boss* to repair, and regardless of whether the plaintiff had used proper care, was error. In such cases the question of contributory negligence is for the jury.

5.  **Charge Defective.**—A charge assuming that one not shown to be the representative would bind the company in a promise to remedy the extinction of an electric light not furnished nor controlled by the defendant company, was error; nor should his negligence have been submitted as that of the company.

6.  **Servant Remaining in Employ Assumes Risk.**—When a servant remains in an employment known to be dangerous because of defective machinery, or appliances not sufficient for the safe conduct of the business, he is said to assume the risks incident to the business thus conducted, and to be guilty of contributory negligence if an injury occurs to him through their use.

7.  **Same—Qualification—Case in Judgment.**— If Whitney was the representative of the company whose duty it was not to do any act that would imperil its servants' safety while engaged in loading the iron upon a car, then if at the time of the injury he did any act (by making unnecessary noise) which prevented them from hearing and having the benefit of signals known to be necessary to the safe performance of the work, we are not prepared to hold that this would not fix liability on the company if his act was the cause of the injury and within the scope of the powers conferred upon him, although the servant may have known that he had done the same or similar acts before that time.

Appeal from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion gives a statement.

*J. W. Terry,* for appellant.—1. (1) Where an employe obtains knowledge of any defect in the machinery or appliances, or of any deficiency in anything required for the performance of the work, or that the work is being improperly conducted by reason of improper conduct on the part

of the foreman or otherwise, and continues in the employment with knowledge thereof, he thereby assumes the risk therefrom.

(2) Under the conditions stated in the first proposition, where an employe has called the master's attention to the defect, deficiency, or improper conduct, and the master has promised to remedy the defect, deficiency, or improper conduct, the servant may continue in the employment for a reasonable time, provided that in view of such promise and all of the surrounding circumstances a reasonably prudent person, having a reasonable regard for his own safety, would have continued in the employment notwithstanding the existence of such defect, deficiency, or improper conduct; but where the danger from the defect, deficiency, or improper conduct is apparent, imminent, confessed, and admitted, the servant will be guilty of contributory negligence in continuing in the work, notwithstanding the master's promise.

(3) The petition is insufficient on the light question, because it fails to allege that plaintiff was induced to continue at work by defendant's promise to restore the light, and does not allege that the defendant requested the plaintiff and his coemployes to continue in the work without the light.

Under first proposition. Railway v. Somers, 71 Texas, 700; Railway v. Bradford, 66 Texas, 732; Rogers v. Railway, 76 Texas, 502; Beach on Con. Neg., sec. 140, and cases cited; Thomp. on Neg., 1010.

Under second and third propositions. Wood's Mast. and Serv., secs. 361, 378, 381; Whart. on Neg., sec. 220; 2 Thomp. on Neg., p. 1009, sec. 16; Whitaker's Smith on Neg., note pp. 398, 399; Railway v. Drew, 59 Texas, 12; Railway v. Donley, 70 Texas, 373; Holmes v. Worthington, 2 Fost. & Fin., 533; Smith v. Dowell, 3 Fost. & Fin., 238; Laning v. Railway, 49 N. Y., 521; Holmes v. Clark, 6 Hurl. & N., 349; same case, 7 Hurl. & N., 948; Pattison v. Wallis, 1 Macq. H. L. Cases, 748; Conroy v. Iron Works, 62 Mo., 35; Pattison v. Railway, 76 Pa. St., 389; Railway v. Watson, 33 Am. and Eng. Ry. Cases, 342; Railway v. Duffy, 4 Am. and Eng. Ry. Cases, 637; Green v. Railway, 15 Am. and Eng. Ry. Cases, 214; Hough v. Railway, 100 U. S., 213.

2. (1) It is the duty of a foreman of laborers to rush them in the performance of the work; that is the very purpose for which the foreman is hired and placed there by the master. The danger of being injured by such rushing is one of the ordinary risks of the employment, and is assumed by the employe. The petition does not allege that the foreman was making any unusual noise or doing any unusual rushing, or that the noise made by him was not proper, usual, ordinary, and customary noise made by the foreman for the purpose of rushing the men. The allegation that the foreman was negligent and careless in the rushing and hallooing is a mere conclusion of the pleader, and subject to the objection made in the first proposition under the third assignment.

(2) The acts charged against the foreman were merely the acts of a fellow servant, for which the plaintiff can not recover, such acts being in no way connected with the foreman's power to employ and discharge laborers, it being such acts as any ordinary foreman without power to employ and discharge would be expected to perform under the circumstances.

Under first proposition. Loyne v. Railway, 133 U. S., 390; Railway v. Tarver, 72 Texas, 308.

Under second proposition. Railway v. Blohn, 73 Texas, 637; Railway v. Farmer, 73 Texas, 85; Robinson v. Railway, 46 Texas, 540; Bish. on Noncon. Law, secs. 661–668; McKinney on Fel. Serv., pp. 290–292, and cases cited; Crispin v. Bobbitt, 81 N. Y., 516; McCrosker v. Railway, 84 N. Y., 77; Railway v. May, 108 Ill., 299; Lindale v. Woods, 42 N. W. Rep., 1020; Brick v. Railway, 98 N. Y., 211; Hoke v. Railway, 11 Mo. App., 574; Queen v. N. J. L. Co., 23 Fed. Rep., 363.

3. To excuse a servant from the assumption of a risk on the ground that the master had promised to remedy the defect or deficiency, it must appear that such promise was made on behalf of the master by some agent authorized to make the same. The evidence in this case wholly fails to show that the defendant ever at any time undertook to furnish its employes other lights than the hand lights, which the evidence shows they had on the night in question. The evidence is that the defendant had nothing to do with the electric lights, and that the foreman, Patrick, had no authority over or connection with such lights and had no authority to promise that any of them would be remedied. Whart. on Con., sec. 220; McGowan v. Railway, 61 Mo., 528; Murphy v. Smith, 19 C. B., N. S., 361.

4. Under the facts and evidence in this cause it was error for the court to charge the jury generally that they could find for the plaintiff if his injuries were caused by the negligence of the defendant or its agents, without distinguishing between fellow servants for whose negligence defendant was not liable; and further, there was no evidence before the jury which could reasonably authorize them to find that any agent for whose negligence the defendant would be liable was guilty of any negligence.

*W. B. Denson,* for appellee. —1. If master or representative does that which deprives the servant of a means of protection from injury in the performance of his duty, and injury results therefrom, the master is liable. Railway v. Drew, 59 Texas, 12; Railway v. Donnelly, 70 Texas, 373; Shanny v. Mills, 66 Me., 420; Kroy v. Railway, 32 Ia., 357; Lanning v. Railway, 49 N. Y., 521; Blair v. Railway, 43 Ia., 662; 2 Thomp. on Neg., sec. 1009; Bish. on Non-Con. Law, sec. 639.

2. If the foreman of appellant negligently and carelessly rushed and hallooed so much at appellee and the other laborers as to confuse them in their work and prevent them from hearing the signals which were given

in its performance and rendered them less able to do the work safely, which was well calculated to and did contribute to the injury of appellee, then the master is liable.

3.  The lights were a necessary part of the appliances for labor at night.  Appellant had sufficient light when appellee begun for him to work in safety.  The corporation is equally liable whether the negligence was in originally failing to provide or in afterwards failing to keep the working apparatus in safe condition.  The promise to remedy the defect in the light by the man whose duty it was to furnish and attend to the lights, and who stood in the place of the superintendent in his absence, was an assurance upon which the appellee had a right to rely that the light would be promptly restored.  Railway v. Drew, 59 Texas, 12; Railway v. Donnelly, 70 Texas, 373; Hough v. Railway, 100 U. S., 213; Painton v. Railway, 83 N. Y., 7; Ford v. Railway, 110 Mass., 240; Railway v. Avery, 109 Ill., 314; Railway v. Marcelles, 59 Texas, 338; Shanny v. Mills, 66 Me., 418–425; 2 Thomp. on Neg., pp. 985, 1032, sec. 36; Railway v. Stout, 17 Wall., 553; Railway v. Herbert, 116 U. S., 642; Bish. on Non-Con. Law, sec. 647.

STAYTON, CHIEF JUSTICE.—Appellee brought this action to recover damages for an injury received by him while in the employment of appellant.

With others, on the night of November 5, 1889, appellee was engaged in loading a flat car with railroad iron, each bar of which weighed as much as 600 pounds.  The iron as brought from a ship by its servants was received from their hands by the employes of appellant, eight in number, who would immediately, and without laying it down, carry it to the car on which it was to be placed, when at a signal to be given by one of them, who was agreed upon, all were expected to throw the rail on the car.

The manner in which the operation was performed is thus stated by a witness: " It is customary to give the signal by the leader calling out the word 'heave' when he went to throw the iron, and all the men would throw at once.  The different signals were 'take iron,' 'raise breast high,' and the third was 'heave.'"

The case which plaintiff's evidence tends to make is that while the men were engaged in loading iron an electric light near by went out and left them with insufficient light, though there were other lights near by.  That after this light went out one of the men engaged in loading the iron called to a man by the name of Patrick, telling him that the light was out and some one would get hurt, and that in reply to this Patrick told them to proceed with their work and he would have the light renewed; that they continued to load iron after the light went out, and were in the act of throwing a bar of iron on the car when, not hearing the command to

"heave," the men at the end of the bar where plaintiff was failed to do so, which caused the bar to fall on plaintiff's foot and seriously injure it.

It was claimed that if the light had been there the men could have seen the motions of their fellows and would not have been compelled to govern their actions by the signal alone. It was further claimed that one Whitney, who was the representative of appellant, was very noisy, in fact so much so as to prevent those engaged in loading iron from hearing the signals.

It was shown that Whitney was the representative of the company for whose negligence in the performance of his duties as such representative appellant would be liable; but Patrick is not shown to have been vested with any representative character other than that of an overseer or boss, whose duty it was to superintend the loading of iron.

Plaintiff testified that "About ten minutes before I was hurt the electric light under the shed where we were working went out. A few minutes after it went out Andrew Blackburn, one of the crowd with whom I was working, called out to Patrick, who had charge of the lights, and said we did not have enough light, and that if we continued to work there without the light some one would get hurt. Patrick said to Blackburn, 'Go ahead and I will fix the light.' I knew it was dangerous to handle the iron without a good light, but Patrick, who was Mr. Whitney's head man over us, promised to fix the light and I expected that he would do so until I was hurt."

Another witness stated: "We knew it was dangerous to load iron without a better light, but did not want to quit work."

The evidence shows that neither appellant nor its employes had any control of the electric light, but that this was owned and controlled by the electric light company, who furnished the light which went out and others to the steamship company.

Appellant, however, had one dozen railway lamps, some of which were in use when the accident occurred, and these were lighted by Patrick before the accident.

The evidence for defendant tends to rebut all the material facts testified to by witnesses for plaintiff, except the fact of his injury; tends to show that the light did not go out; that there was other sufficient light; that Patrick made no promise to restore the light, and that Whitney made no noise and was not present when the accident occurred.

Many questions are raised on the rulings of the court overruling exceptions to the petition, and on the ruling of the court in refusing a new trial, but most of these may be considered under an assignment which questions the correctness of a charge given by the court.

That charge was as follows: "If you believe from the evidence that the going out of the electric light was the cause of the plaintiff's injury, and that it was unsafe to handle the railroad iron after the light went

out, and that the defendant's boss of plaintiff was informed that the light was out and promised to attend to restoring the necessary light, and that the plaintiff continued to work by reason of the boss's promise to remedy the defect in the light, and that the boss did not in a reasonable time restore the light, and that the boss was guilty of negligence in not remedying the defect of light, and that such negligence was the cause of plaintiff's injuries, then the plaintiff would be entitled to recover of defendant for damages for such injury."

This charge assumes that the promise of the person termed a "boss" to renew the light would fix liability on the railway company, if a failure to renew it would constitute negligence, without reference to the contributory negligence of appellee.

We do not understand that it has ever been held that the promise of a master to repair a defective machine or implement used in his business and known by both to be dangerous will relieve the servant from the ordinary result of contributory negligence on his own part, though cases may be found in which stress was laid on the fact that such a promise was made.

If both have knowledge of such a defect, and the master request the servant to continue in the service, the latter is authorized to believe that the former will repair the defect, because it is his duty to do so; but if with a knowledge that this has not been done after a sufficient time has elapsed to do it, the servant continues in the service, we see no reason why the ordinary rule should not apply.

It has been said that the master's promise to repair the known defect removes the presumption that the servant assumed the risk resulting from the defect; but we may ask, how long does it remove that presumption? May the servant rely upon the promise when he sees that it has been violated, and perform the dangerous act when he knows that the defect has not been repaired?

Under such a promise and request to go on with the work, the servant doubtless is given ground to believe that a defect will be repaired before he will again be called upon to place himself in danger from it; and the fact that he may be subsequently injured through the defect ought not to defeat his right to recover, if he was ignorant of the continued existence of the defect at the time the injury occurred.

In such a case the master ought not to be heard to say that the servant ought not to have relied on his promise.

It would be difficult to find a principle on which to base a rule relieving a servant from obligation to use proper care for his own safety because the master had promised to repair a known defect which exposed him to danger and had requested him to remain in a service known to be dangerous. It can not be placed logically on the unequal situation of master and servant in a country in which all men are free to serve or not to serve any particular employer.

If it be placed on the ground that the promise to repair and request to continue in the service rebut the ordinary presumption that the servant assumes the known risk incident to the given employment, it will be difficult to maintain it in a case in which the servant continues in the service with a knowledge that the defect has not been repaired, and that he is in constant danger from the use of the defective thing.

If it be placed on the broad but very indefinite ground that justice and policy require such a rule, it will be difficult to give a reason why the same rule should not exist in all cases in which injuries result from the use of defective appliances or implements known by employer and employe to be defective and their use dangerous; for the law implies an undertaking on the part of the employer to furnish reasonably safe machinery, implements, and appliances, and to repair them when out of order; and it implies a request to continue in the service and to use them until notified ,that this is no longer desired, unless the employment is for a definite period.

When there is no express promise to repair or request to continue in the service the employe assumes the risks incident to a service conducted with machinery, implements, or appliances known by himself as well as the employer to be defective and dangerous.

This being true, it is difficult to perceive that there should be a difference, on grounds of policy or justice, between the liability of the employer based on an implied promise or obligation and request and that based upon an express promise to repair and request to continue in the service in any case in which the employe knows that the defect has not been repaired, but continues to use the defective thing or to work without something known to him to be necessary to his safety.

Cases may arise in which, through contract, an employer may become liable to an employe who is injured while in his service under circumstances that would defeat all claim under the ordinary rules applicable to master and servant.

The charge in question left out of view altogether any consideration of the question whether the plaintiff exercised that degree of care which the law required of him, and made the case to turn on the promise of the "boss" and his failure to use proper care.

In such cases the question of contributory negligence or no must be left to the jury. Laning v. Railway, 49 N. Y., 521; Clark v. Holmes, 7 Hurl. & N., 942; Ford v. Railway, 110 Mass., 261; Patterson v. Railway, 76 Pa. St., 394; Conroy v. Iron Works, 62 Mo., 36; Keegan v. Kavanaugh, 62 Mo., 233; Hough v. Railway, 100 U. S., 214.

The charge assumed that Patrick was the representative of the company in reference to the matter of lights, and that his promise and negligence in this respect was in effect the promise and negligence of his employer.

It is evident that neither Patrick nor the railway company had any control over the electric lights, which were rented by the steamship company, and it is not shown that the company placed Patrick at the wharf to provide lights.

It appears that defendant furnished twelve railroad lights to be used about the place where the men were working, and that Patrick had lighted ten of these and put them on a table, from which any employe needing a light could take it, and some of these seem to have been used to light the place of loading.

Whitney was shown to be the representative of the railway company in control of the work going on that night, and that Patrick was clothed with any other power than to oversee the loading of the train is not shown; and under this state of facts we are of opinion that the court should not, in effect, have instructed the jury that the negligence of Patrick was the negligence of the railway company, or his promise its promise.

If he was simply a fellow servant of those engaged in loading iron, neither his promise nor negligence could fix liability on the company; but if he was charged by his employer with the duty of furnishing lights, his negligence in this respect would be the negligence of his employer, and those engaged in the work might rely upon his promises as fully as could they upon those of any representative of the railway company.

The charge of the court assumed his representative capacity, and under the evidence we believe it was not authorized to do so.    McGowan v. Railway, 61 Mo., 532; Whart. on Neg., 220; Railway v. Farmer, 73 Texas, 85; Robinson v. Railway, 46 Texas, 550.

Whether the railway company was negligent in failing to furnish other light when the electric light ceased was a matter proper to be submitted to the jury under all the facts of the case, but whether this was so should not have been tested solely by the action of Patrick or his failure to act.

The court gave the following charge: "If you believe from the evidence that the defendant's agent, Whitney, made such unnecessary noise that thereby the plaintiff could not hear the proper signals, and that the defendant's agent was guilty of negligence in making the noise, and that such noise was the cause of plaintiff's injuries, then the plaintiff would be entitled to recover his damages for his injuries."

It is urged that this charge should not have been given without the qualification that contributory negligence of plaintiff would defeat his right of recovery; and this proposition is based on the fact that plaintiff's evidence tended to show that Whitney had been boisterous all the evening, using loud and profane language to urge the employes forward with the work, which prevented their hearing signals.

When a servant remains in an employment known to be dangerous because of defective machinery, implements, or appliances not sufficient for the safe conduct of the business, he is said to assume the risks incident to

the business thus conducted, and to be guilty of contributory negligence if an injury occurs to him through their use. But does the same result follow when the injury results from some affirmative act of the master or his representative, even when the servant, knew that the master or his representative had done the same thing frequently before the time of the injury?

When the cause of the injury is the direct act of the master or his representative it can not be said that the servant remaining in the employment is the proximate cause of the injury, even though the servant may have known that the master or his representative had frequently done the same or similar acts which imperiled his safety; for the act which in such case causes the injury is the wrongful act of the master or of his representative, the result of the exercise of the will of the one or the other, and hence the proximate cause of the effect, from which the master ought not to be permitted to go free from liability on the ground that the servant knew he had, before the happening of the injury, done acts such as that from which the injury resulted, but still remained in his service.

The master's failure to furnish what is necessary to the conduct of his business with reasonable safety to his servants and their continuance in his service with a knowledge of such fact may defeat the right of the servant to recover for an injury resulting from such a cause; but this rule can not be invoked to shield the master from liability for his own or his representative's affirmative acts from which injury to his servant directly results.

This is but the application of the rule that contributory negligence does not bar an action for willful wrong, which as here used means an intentional act through which injury results, though no purpose or desire to do the injury may have existed.

If Whitney was the representative of the company, whose duty it was not to do any act that would imperil its servants' safety while engaged in loading the iron, then if at the time of the injury he did any act which prevented them from hearing and having the benefit of signals known to be necessary to the safe performance of the work, we are not prepared to hold that this would not fix liability on the company if his act was the cause of the injury and within the scope of the powers conferred upon him, although the servant may have known that he had done the same or similar acts before that time.

For the error before noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 20, 1891.