WOODS, Circuit Judge.
John Erickson, the defendant in error, recovered judgment against the Dells Lumber Company, plaintiff in error, for personal injuries sustained in the employment of that company while operating a matcher in the company’s planing mill at Eau Claire, Wis.,—his foot having been caught and crushed between pulleys under that end of the machine near which he was required to be when operating it. The gist of the declaration is that the negligence of the company which caused the injury consisted in omitting to equip the matcher with a spring to hold the boards being matched against the guides, and in omitting to cover or guard the pulleys; that by reason of the absence of the spring the plaintiff was compelled to press with all his strength against the boards to keep them moving in a straight line under the knives; that, while so engaged, a board broke under his hand, causing him to fall and his foot to be caught between the revolving pulleys. When the evidence was all in, the plaintiff in error moved the court to direct a verdict in its favor, but the motion was denied. Whether that ruling was right is the chief question in the case, and its determination depends upon the inquiry whether the defendant in error should be regarded as having assumed the risk of injury from the unguarded pulleys. That the omission to cover the pulleys, or in some mode to guard the operator of the machine against danger from them, was a breach of the company’s duty to provide its employé a safe place in which to work is too clear for controversy; but it is contended that Erickson had become aware of the danger, and that by continuing in the service he assumed the risk. The accident occurred on Tuesday, and it appears that, on the Saturday next preceding, Erickson complained to John Bonk, whom he supposed to be the superintendent of the mill, about the condition of the matcher, and declared his purpose to quit work unless a spring was supplied and the pulleys covered, whereupon Bonk requested him not to quit, and promised that the spring should be supplied and the pulleys guarded. The promise, it is insisted, was not binding upon the company, and was unavailing to Erickson as an excuse for continuing to work under conditions of known danger, because Charles Charlesson, the foreman in the mill, was the one who had charge of the machinery, and determined what repairs and alterations should be made, while Bonk, instead of being the superintendent, was only a fellow servant of other employés, and possessed of no authority to promise that repairs or additions to the machinery of the mill should be made. Erickson testified that he believed Bonk to be the superintendent, and other witnesses asserted a like understanding. It is undisputed that Bonk had authority and was accustomed to hire and discharge the workmen employed in the planing mill. He hired Erickson and fixed his wages, as he did the wages of others, and there are other circumstances in evidence which tended to show that he exercised and had the authority of a superintendent. It was therefore a question for the jury, if the point were controlling, whether he was exceeding his powers when persuading Erickson to continue in a service for which, if he quit, another must have been employed. We are of opinion, however, that the important inquiry was not so much what authority did Bonk really possess, as what *259 Erickson supposed him to have. If the danger to be avoided had been a newly-developed one, of which the company was without notice, as in tie case cited of Railway Co. v. Benford (Tex. Sup.) 15 S. W. 561, where the injury was caused by the going out of an electric light, or in Holmes v. Clarke, 6 Hurl. & N. 359, where the fence about dangerous machinery had broken after the injured servant had taken employment, the rule contended for would not be unreasonable,—that the servant continuing to work in the face of the new danger should be deemed to assume the risk, regardless of any promise of a fellow servant, or of any unauthorized person, to remove the source of danger. In such a case there would be lacking an essential element of liability on the part of the master,—notice of the existence of the condition of danger, or such lapse of time as would be equivalent to notice. See Railroad Co. v. Kenley (Tenn. Sup.) 21 S. W. 326. In this case there is no question of notice. The ground of the master’s liability existed from the beginning, and the sole question is whether the servant, who otherwise would be indisputably entitled to indemnity, must be declared to have consented to take upon himself the consequences of the master’s known delinquency. There is no reason for imputing to him an intention to do so. Believing, as he reasonably might, that Bonk had all the authority which he assumed to have, his remaining in the dangerous service was an act of the same quality as if his belief had been well founded. His excuse for incurring the risk of further work upon the machine, viewed with reference to his own conduct, is no less meritorious than if the promise to put a guard about the pulleys had come from Charlesson, or some other of unquestioned authority to make it. The dictates of ordinary prudence, of course, are not to be disregarded, and no promise, by whomsoever made, can justify the incurring of imminent and obvious risks; but while the possibility of injury from the exposed pulleys here in question was obvious, and the company’s responsibility for failing to provide a suitable guard clear, the danger was not imminent, and under ordinary circumstances was easily avoided, if the operator was watchful. A like hurt, or serious injury.of any kind, had never been received before by any one engaged in operating the machine; and it was therefore not a grossly reckless, or even plainly imprudent, act on the part of Erickson to resume work upon the machine on Tuesday, though he found the pulleys yet unguarded, and no spring provided to keep the boards against the guides. To say the least, the question whether he should be deemed to have assumed the risk involved, or to have been lacking in due care for his own safety, was properly left to the determination of the jury. It was manifestly a question for the jury whether the defendant in error was guilty of contributory negligence by reason of the manner in which he held the particular board which he was feeding to the machine when the accident occurred. It follows, too, from what has been said, that the court did not err in refusing to instruct that unless Bonk was in charge of the planing mill “so as to represent the defendant,” the complaint made to him was a complaint to a fellow servant merely, and not binding on the master. The exceptions reserved to the introduction of evidence present no question of importance. The judgment of the circuit court is affirmed.