BURCH v. SOUTHERN PAC. CO.

(Circuit Court, D. Nevada. May 7, 1906.)

No. 813.

1. NEW TRIAL—GROUND—EXCESSIVE VERDICT.

A court is not authorized to set aside a verdict for damages as excessive unless the amount is so large as to indicate passion or prejudice on the part of the jury.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 153–155.]

2. SAME—SUFFICIENCY OF EVIDENCE.

Where there was direct and positive evidence in support of a verdict the court is not authorized on a motion for a new trial to consider the question of the number or credibility of the witnesses.

3. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Where there was evidence tending to show that an employé of defendant to whom plaintiff complained of a defective appliance had authority to make or order repairs, the question of such authority if disputed is one for the jury.

On Motion for New Trial.

See 140 Fed. 270.

H. R. MacMillan and H. H. Henderson, for plaintiff.

S. Summerfield and E. E. Roberts, for defendant.

HAWLEY, District Judge (orally). A new trial is asked for upon three grounds: (1) Excessive damages appearing to have been given under the influence of passion or prejudice; (2) insufficiency of the evidence to justify the verdict; (3) "errors in law occurring at the trial and during the instruction of the jury by the court and excepted to by the defendant."

1. It must be admitted that the jury were exceeding liberal in the amount of damages allowed, and marched up near the border line;

but I do not feel authorized to say that the amount is so excessive as to indicate passion or prejudice upon the part of the jury, which seems to be the only ground that gives authority for the court to interfere with the amount of the verdict.

2. Can it judicially be said that there was "a clear preponderance of evidence" against the verdict? The court instructed the jury "that it devolves upon the plaintiff in making out his case to establish by a preponderance of evidence all of the essential affirmative allegations in his complaint which are denied in the answer." Again, "you are the sole judges of the credibility and weight that is to be given to the different witnesses who have testified upon this trial," and further instructed the jury as to the methods they should use "in judging of the credibility of the respective witnesses in this case, there being a conflict upon some points." The testimony of the plaintiff was clear, direct, and positive upon all the material points in the case. There was nothing in his manner, conduct, or appearance to reflect upon his credit. It may be admitted, as is claimed, that this could not be said of all the witnesses who testified in his favor. The jury might, under the instructions, have disbelieved, and for that reason have discarded, some of their statements, but this is a matter solely within the province of the jury. The preponderance of evidence does not depend upon the number of witnesses. This is not the governing question. The truth is, there was a direct conflict upon the controlling point as to whether the plaintiff gave notice to an agent of the defendant of the defective switch stand, who was authorized, or whose duty it was, to see that the repairs were made. There was ample evidence to sustain the verdict. In such cases courts would not, in my opinion, be justified in granting a new trial upon the ground stated.

3. At the trial I was impressed by the testimony of the witnesses that there was some conflict as to whether or not the yardmaster was given authority to make repairs when notified that anything in his department was in a defective and dangerous condition, and hence left it to the jury "as a question of fact to be decided by you, to be determined from the evidence, as to whether or not the yardmaster had the power or authority, by virtue of his position, or by express authority from his master, to make repairs, and gave a promise that he would do so. This question is to be determined by you from all the facts whether he had authority from the corporation—whether he had authority from one possessing the power to give him authority— or whether it was the custom or duty of such an officer to perform such duty."

Mr. Burch, the plaintiff, testified:

"Q. To whom had you made that report [defect of the switch stand]? A. To the yardmaster on one occasion when working by the switch. * * * Q. Who was the yardmaster you made the report to? A. Mr. Fridley, William Fridley, I believe. Q. Do you know what the duties of the yardmaster were? A. Well, he has to exercise a general jurisdiction over the yard work. Q. Does he hire and discharge men? A. Yes, sir. Q. Does he have the authority to order repairs? A. Yes, sir. * * * Q. * * * I will ask you, do you know, of your own knowledge, whether the yardmaster ever ordered repairs? A. Yes, sir. * * * Q. You say you know of your own knowledge

of the yardmaster giving orders for repairs? A. Yes, sir. Q. Do you know whether afterwards the repairs were made? Yes, sir; they were afterwards made."

Mr. Fridley, the yardmaster, testified as follows:

"Q. As yardmaster there will you explain to the jury what your duties were? * * * A. I was supposed to look after the business that was carried on in the yard there during these particular hours that I was on duty, and to hire and discharge the men. Q. Was one of your duties to order repairs made? A. Yes, sir. * * * Q. You never had any specific instructions as to what your duties were out there in the yard? A. No, sir. Q. And you assumed the duties there that you had seen other men assume? A. Yes, sir. * * * Q. Was that the custom there in that yard? A. Yes, sir. Q. That the yardmaster gave instructions for repairs? A. Yes, sir. Q. And you followed out that custom? A. I did, sir."

Without quoting any further testimony, I am still of the opinion that there was sufficient evidence to justify the leaving of this question to the jury. My attention has not been called to any authorities which hold to the contrary.

The charge given by the court in Parody v. Chicago, M. & St. P. Ry. Co. (C. C.) 15 Fed. 205, 206, supports the instruction under review. Judge Nelson, among other things, said:

"There is evidence tending to show that the drawbar was an improper one, and not in ordinary use by the company in the yard; that the switch engine upon which plaintiff worked when first employed did not have it attached; and that shortly after he worked upon this engine he complained to the yardmaster, telling him that it was dangerous, who promised to remove it, but did not, and that he remained at work after complaint and unfulfilled promise until * * * he was injured. * * * In regard to the notice required to inform defendant of this, it is sufficient that notice was given to that agent or servant of the defendant, who made a requisition for the appliances necessary to be used in the yard of the defendant, and whose duty it is to guard against injurious consequences of defects in the particular appliances used therein. Such a person is the yardmaster. He represents the company, and since it delegated to him the authority to make requisitions for engines, etc., for the use of the yard, notice to him of dangerous drawbars will be notice to the defendant. He is the proper person, and if after such notice he promised to remedy it, a failure to do so is the negligence of the defendant."

In Picart v. Chicago, R. I. & P. Ry. Co., 82 Iowa, 148, 159, 47 N. W. 1017, 1019, the court said:

"But plaintiff claims that deceased protested against using the engine without such board, and that the agent of defendant promised that that engine should soon be removed, and that deceased would not be required to work but a short time with it, and, by promises and assurances given, induced him to continue in his position as switchman. Appellant contends that there is no evidence of such promise, and that the court erred in submitting that inquiry to the jury. Numerous authorities are cited to show that there must have been an express or implied promise, and, upon the other hand, that a mere assurance upon which the employé relied is sufficient. If, upon objection to the employer or one authorized to act for him, the employé is given to understand that the defect will be remedied, he has a right to act upon that assurance. This brings us to inquire whether complaint was made to one having authority in such matters. The two conversations relied upon were with Cain, the yardmaster, under whose orders deceased performed his duties as switchman. It appears that the yardmaster had no authority to direct repairs on the engine, but, if an engine was furnished him lacking

some appliances necessary for switching, it was his duty to report to the trainmaster, who would determine the advisability of furnishing whatever was required. We think under this showing the yardmaster was the proper person to whom deceased should complain. * * * Defendant's business is transacted by many officers, agents, and servants of different grades. It being the duty of the yardmaster to report such complaints to another, the complaint was properly made to him, though he may not have had authority to remedy the difficulty complained of. * * * No particular form of words is required to constitute a complaint or assurance. If, by any acts or expressions, the deceased gave the proper agent of defendant to know that he was unwilling to continue in the 'employment without running boards on the engine, that was a sufficient complaint; and, if by any acts or expressions the agent gave the deceased reason to believe that running boards would be furnished, that was a sufficient assurance or promise. * * * If such assurance was made, and deceased was induced thereby to continue in the employment, then, as we have seen, the defendant assumed the risks incident to the performance of the work without running boards until such boards should be furnished. The foregoing views of the law are so uniformly sustained by the authorities that we do not deem it necessary to make citations. We think there was no eror in submitting the inquiry as to the complaint and promise or assurance to the consideration of the jury."

See, also, Homestake M. Co. v. Fullerton, 69 Fed. 923, 928, 16 C. C. A. 545; Dells Lumber Co. v. Erickson, 80 Fed. 257, 259, 25 C. C. A. 397; Swift & Co. v. O'Neill, 187 Ill. 337, 342, 58 N. E. 416.

In 1 Labatt on Master and Servant, cited by the defendant, at section 420, under the head of "Whose promise is binding on the master," the author said:

"The question whether the employé in question was authorized to make the alterations requisite to secure the servant's safety is for the jury, whenever evidence has been adduced which is reasonably susceptible of the construction that he was so authorized."

Motion for new trial denied.