Meier vs. Morgan and others.

MEIER, Respondent, vs. MORGAN and others, Appellants.

*April 16 — May 3, 1892.*

*(1–3) Master and servant: Injuries caused by defective building: Negligence of owner or of independent contractor. (4) Limiting number of witnesses; Exception, when to be taken. (5) Jury returning for further instructions: Absence of counsel.*

1. In an action for personal injuries caused by the fall of the side of defendants' ice-house, near which plaintiff was working for them, and which had recently been filled with ice under the direct supervision of one of the defendants, the jury were properly instructed that if the preponderance of evidence showed that in filling the ice-house defendants carelessly permitted ice to be pushed against the side of the building and thus weakened it, and that this was the proximate cause of the accident, the plaintiff, if in the exercise of ordinary care, was entitled to recover.
2. The owner of a building cannot dictate that it be constructed of improper materials or upon an improper plan, and escape liability for injuries occasioned thereby because he made a contract with a third person to build it.
3. Nor can such owner, with knowledge of a weakness or defect threatening the strength of the building, set a man at work immediately under it, and shift all responsibility upon the builder.
4. A reasonable limitation of the number of witnesses upon a single fact is within the discretion of the trial court; and an objection or exception to such limitation should be taken when the ruling in that behalf is first made.
5. When, in a civil case, the jury returns into court for further instructions, it is the better practice to procure the attendance of counsel for both parties; but the failure to do so cannot be held error, in the absence of anything to show that the complaining party was prejudiced thereby.

APPEAL from the Circuit Court for *Dane* County.

This is an action to recover for personal injuries suffered by plaintiff by the falling of the east side of an ice-house owned by defendants. The ice-house was built in March, 1890, and was in four sections or parts, each section being 34 feet by 100 feet, and being practically separate buildings, but joined together, one row of studding answering for the sides of two adjoining sections. Each section had its own gable roof. The eaves were about twenty feet from the ground. The studding was of two by six inch scantling, sheathed inside, the top plate a single two by six scantling, the roof timbers of two by six scantling, fastened to the top plate by notches and nailing, and meeting at the center of each division of the roof. The first three sections had been constructed and filled with ice before the fourth or east section (the outside wall of which fell on the plaintiff) was commenced. The buildings were built by one Frederickson under oral contracts with defendants, and there was evidence tending to show that the defendants themselves determined as to a part of the materials to be used and manner of construction of the building, especially as to the single top plate. The defendants, however, claimed and testified that they had nothing to do with the selection of materials or manner of construction. The first three sections had nine tie-beams, reaching from one top plate to the other, but the section that fell had but four or five such beams at the time of the collapse. Before the roof was put on this section the defendants filled it with ice under the personal supervision of *Behrend*, one of the defendants, and *Behrend* knew that there were but four or five tie-beams in position when the filling with ice was completed. After the ice was in, Frederickson's men commenced again upon the roof, and upon the morning of the accident had put upon the roof a large number of bunches of shingles, and several men were on the roof at the time.

The side of the building fell outwards at about 10 o'clock in the morning, on March 21st.  At 8 o'clock on that morning the plaintiff, without warning as to possible danger, was set to work by defendant *Behrend* on the side of the building which collapsed, throwing up dirt or banking the house.  Previously the plaintiff had been employed by defendants upon the lake and about the runways, and had spent one day ditching about the northwest corner of the house, but had not been at work in or about the section which fell.  While he was at the work of banking the building, the side fell out without warning, and threw him down, by which he received injuries which he claims are in some degree permanent.

The defects in the building which plaintiff claims caused the collapse were the single top plate and the absence of the proper number of tie-beams.  The plaintiff also claimed and introduced some evidence tending to show that the packing of the building with ice was improperly done; that the pieces of ice were allowed to run with great force against the side of the building, and thus weakened it.  The defendants deny all negligence in storing the building with ice, or in any other regard, and claim that the houses were built by an independent contractor over whom they had no control, according to his own plans, and with materials of his own selection, and for whose negligence they were not liable.

The trial resulted in a verdict and judgment for the plaintiff for $500 damages, from which defendants appeal.

For the appellants there was a brief by *H. W. Chynoweth* and *R. M. La Follette*, and oral argument by *Mr. Chynoweth*. They cited *Haley v. Jump River L. Co.* 81 Wis. 412; *Hackett v. W. U. Tel. Co.* 80 id. 187; *Harper v. Milwaukee*, 30 id. 365; Mechem, Agency, sec. 747, and cases cited; *Sweet v. Ohio Coal Co.* 78 Wis. 127; *Kelley v. C., M. & St. P. R. Co.* 53 id. 74; *Naylor v. C. & N. W. R. Co.* id. 661;

*Hobbs v. Stauer,* 62 id. 108; *Stephenson v. Duncan,* 73 id. 404; *Johnson v. Ashland Water Co.* 77 id. 51; *Carey v. Sellers,* 41 La. Ann. 500; *Thorn v. N. Y. C. Ice Co.* 46 Hun, 497.

For the respondent there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler.*

Winslow, J.   The building in question was very hastily constructed just as the ice season was closing, and was evidently filled with equal or greater haste.   The evidence shows very clearly that the collapse of the side of the building might have resulted from one of three causes, or from two, or all of them combined, viz.: (1) Insufficiency of the single top plate; (2) insufficiency of the tie-beams; (3) negligence in allowing the cakes of ice to run violently against the side of the building while it was being filled, thus weakening the side and tending to shove it outward.

The legal principle is that, if the collapse was wholly or partially the direct or proximate result of the negligence of the defendants, they are liable for the plaintiff's injuries resulting therefrom, in the absence of contributory negligence on his part.   The defendants were also under obligation when they set plaintiff to work to furnish to him a reasonably safe place to work, or to explain to him the dangers which they knew, or ought to have known, and of which he was not chargeable with notice or knowledge.   If there was sufficient evidence in the case, upon which it was properly a question for the jury, as to whether the defendants were negligent in the three particulars first named, and such questions were fairly submitted without error prejudicial to the defendants, it is apparent that the verdict is final, in the absence of error elsewhere in the case.

As to the third ground of negligence, to wit, the alleged careless handling of ice in filling the building, there was sufficient evidence tending to show that ice frequently ran with force against the side of the building, and that this

would tend to weaken it. The filling was done under direct supervision of the defendant *Behrend*, who had had much experience in building and filling ice houses. The circuit judge correctly charged the jury that if the preponderance of evidence showed that the defendants carelessly permitted ice to be pushed against the side of the building and thus weakened it, and that this was the proximate cause of the accident, the plaintiff, if in the exercise of ordinary care, was entitled to recover.

As to the first and second grounds of negligence, to wit, the insufficiency of the top plate and tie-beams, it is strongly urged that the evidence conclusively shows Frederickson to have been an independent contractor, and that the defects named are defects for which the contractor was solely liable. It seems quite clear from the evidence that the defendants reserved no control over the erection of the building after they let the contract, and to this extent Frederickson was an independent contractor. But this fact does not of itself relieve the defendants from all liability. There was ample evidence tending to show that the defendants consulted with the builder, and determined on the materials and plan of construction before the contract was let, especially as to the single top plate, the builder's testimony being that the defendants said, "Single top plates we guess will do." There was also evidence tending to show that the defendant *Behrend*, the active partner, was around the premises constantly, and *Behrend* himself testifies that there were but four or five tie-beams on the section which fell, when they began to put ice in, and that no more were put in up to the time when the filling with ice was completed. The testimony shows that work was begun on the roof immediately after the ice was put in. There was therefore ground for the jury to say that the defendants themselves dictated and are responsible for the weakness resulting from the single top plate, and that they actually knew of the insufficient tie-beams when they set the plaintiff at

work; and if these be the facts, the circumstance that they may have reserved to themselves no control over Frederickson's work cuts little figure.  The owner cannot dictate that his building be constructed of improper materials or upon an unsafe plan, and escape liability for injuries caused thereby because he made a contract with a third person to build it; nor can he, with knowledge of a weakness or defect threatening the strength of the building, set a man at work immediately under it, and shift all responsibility upon the builder; and the circuit judge substantially charged the jury in accordance with these views.  14 Am. & Eng. Ency. of Law, p. 835, and cases cited; *Whitney v. Clifford,* 46 Wis. 138; *Phila. & R. R. Co. v. Trainor,* 137 Pa. St. 148.  The court properly instructed the jury as to the care required of the plaintiff, and that if he could with ordinary care have readily seen the defect which caused the collapse he could not recover.  We believe these remarks dispose of the questions raised by the appellants as to the charge and instructions refused.

During the trial, after the defendants had been examined as to the manner in which the ice was packed in the icehouse, the defendants called other witnesses to establish the fact that the ice was properly packed; and at the close of the testimony of the second witness the court ruled that he would only allow three more witnesses as to that particular fact, making eight witnesses in all, including the defendants themselves.  No objection or exception was taken at the time to this ruling, but at a later stage of the trial, after the number allowed by the court had been examined, the defendants offered another witness on the point, and his testimony was ruled out, and defendants except.  We think the proper time to take the exception was when the original ruling was made.  The ruling seems to have been practically assented to when originally made; certainly it was without objection.  *McConnell v. Osage,* 80 Iowa, 296. A reasonable limitation of the number of witnesses upon a

single fact is within the discretion of the trial court. 1 Thomp. Trials, § 353, and cases cited.

After the jury had been deliberating some time, they returned into court in the absence of counsel (apparently at their own request) and received some further instructions as to the law of the case, and heard a part of the testimony of two of the defendants read. The judge carefully refrained from stating any matters of fact to them, and no exception is taken to his additional instructions upon the law of the case. The entire proceeding is now assigned as error. We know of no rule which requires the court, in a civil case, to send for counsel when a jury desires further instructions. It is the better practice to procure the attendance of both counsel, but, in the absence of anything to show that defendants were prejudiced by it, we see no room for a claim of error.

Some objection is made to that part of the charge which relates to the subject of damages. We perceive no error. The damages awarded were certainly moderate, in view of the testimony.

*By the Court.*— Judgment affirmed.