ENGSTROM, Respondent, vs. ASHLAND IRON & STEEL COM-. PANY, Appellant.

*February 3 — February 23, 1894.*

*Master and servant: Dangerous premises: Court and jury.*

1. Plaintiff, an employee of defendant, was injured by falling through the corrugated sheet iron roof of defendant's building, upon which he had gone to pick up his tools which had been blown from a platform above on which he had been at work. Upon the evidence

(stated in the opinion), it is *held* that the question of defendant's negligence in allowing the roof to become weak and out of repair, and the question of plaintiff's contributory negligence, were properly for the jury.

2. The plaintiff and other employees being required by their duties to go upon the roof from time to time, it was the duty of the defendant to keep the roof reasonably safe or to warn its employees of the hidden danger.

APPEAL from the Circuit Court for *Ashland* County.

The defendant is a foreign corporation and the owner of a certain blast furnace and building, together with the machinery, equipments, and other appurtenances thereunto belonging, and known as the " Ashland Blast Furnace," used in the manufacture of pig iron.   On April 8, 1892, the plaintiff, while in the employ of the defendant in and about said furnace and building, went upon the roof and fell through and was badly injured, and he brings this action to recover damages therefor, on the ground that the defendant negligently allowed the roof to become defective and out of repair, to the plaintiff's damage.   The answer is a general denial.

At the close of the trial the jury returned a verdict to the effect that they found for the plaintiff and assessed his damages at $7,500.   The defendant thereupon moved to set aside the verdict and for a new trial on the ground that the same was contrary to law and evidence, and because the damages were excessive.   Upon the hearing of the motion, the court ordered, in effect, that the motion for a new trial be granted unless the plaintiff within twenty days from the date of such order remit from said verdict all in excess of $4,000.   The plaintiff thereupon did remit from such verdict all in excess of that amount.   From the judgment entered thereon accordingly, the defendant appeals.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins*.   They contended,

*inter alia,* that a person of ordinary intelligence would know that a sheet iron roof, exposed to the elements, would become rusted and rotten and liable to break through. A workman assumes not only the ordinary risks and perils of the service, but also such other risks as become apparent by ordinary inspection. *Kelley v. C., M. & St. P. R. Co.* 53 Wis. 74; *Naylor v. C. & N. W. R. Co.* 53 id. 661; *Behm v. Armour,* 58 id. 1; *Hobbs v. Stauer,* 62 id. 110; *Stephenson v. Duncan,* 73 id. 404; *Sweet v. Ohio Coal Co.* 78 id. 130; *Paule v. Florence M. Co.* 80 id. 350; *Peffer v. Cutler,* 83 id. 281. The plaintiff was, therefore, guilty of contributory negligence in going upon the roof without taking any precautions to protect himself from falling through. *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136; *Corcoran v. Milwaukee G. L. Co.* 81 id. 191; *Haley v. Jump River L. Co.* id. 412.

For the respondent there was a brief by *John F. Dufur* and *Cate, Jones & Sanborn,* and oral argument by *Mr. Dufur* and *D. Lloyd Jones.*

CASSODAY, J. It appears from the record that the furnace consists of two main parts or wings, connected at right angles; that one of the wings was a casting house, and the other a stove house; that there was a top house; that the top house consists of a circular building built above the roof of the casting house near its connection with the stove house, and appears to be nearly over the upper part of the junction of the two wings on the roof of the buildings; that it is connected by a covered way with the stock house and hoisting tower, which is a circular brick structure next to the top house, wherein all the ore, charcoal, lime, and other material used in the manufacture of iron and in smelting the ore were lifted to the roof of the building, and from thence wheeled through a covered way into the top house, and from there emptied into a pipe or shoot near the tunnel head or hopper leading down on the out-

side to the fire box and into the fireplace of the furnace below; that above the roof of the stove house are two large circular structures, called ovens; that at the time of the accident the furnace was shut down for repairs, and the plaintiff was sent up to plaster the tunnel head or hopper and certain parts near, but outside of, the top house, the stock house, and the hoisting tower; that there is a ladder or stairway leading from the ground by the side of the pipe or shoot, and past the same to the door of the top house; that there is also a short ladder inside of the top house, leading up to a small platform above the same, upon which to stand in plastering up the parts mentioned; that at the time of the accident the plaintiff took a pail of mortar and a trowel, and went up the ladder, and first plastered the tunnel head or hopper, and then passed on through the top house and out on the platform above, where he plastered another part mentioned; then he backed down through the trap door in the roof of the top house, leaving his pail on the platform, because, as he claims, the trap door was too small to allow the passage of himself and the pail at the same time; that, as he reached up for the pail and trowel, the wind blew them off onto the roof below, the pail falling under the pipe or shoot into the gutter or trough where the roofs of the casting house and stove house unite; that the trowel fell some distance further, and over the peak of the stove house; that he thereupon descended the ladder to the roof, and went and got the trowel, and then came back and picked up the pail, and, while returning, broke through the roof of the casting house, near the dividing line between the two roofs, and fell thirty feet to the floor below, striking on his back on the bustle pipe, about half way down, and against the iron trough on the floor of the furnace; that the roofs were constructed of rafters about twenty feet apart, with ribs or trusses, four and one-half feet apart, resting on each

rafter and covered with corrugated sheet iron, fastened with screws to such ribs and rafters.

The facts above stated are, in effect, conceded. There is also evidence tending to prove that the platform where the plaintiff was doing the plastering was so small that it was difficult to hold the pail and do the plastering; that the place where he was obliged to set the pail was only from twelve to fourteen inches in diameter, with no railing around it; that the door down into the top house was so small that he had to back down into it without his pail; that, while he was so doing, the pail blew off; that the place where he fell through the roof was about four feet from the stairs; that before the accident he had seen men walking upon the roof many times; that he had, before the accident, at times shoveled snow off the roof and swept it off, and painted it, by the direction of the defendant; that ashes, coal, ore, and dirt would come up from the furnace, and accumulate upon the roof; that the defendant generally had it cleaned off every six months, sometimes every two or three months; that to allow it to remain tended to corrode, weaken, and destroy the sheet iron roofing; that at the time of the accident such accumulation of dirt, etc., at the place of the accident was six or eight inches deep; that it had last been cleaned off some ten months prior to the accident; that the same roof had been on for at least five years; that the defendant's night foreman always warned men sent upon the roof that it was unsafe; that no one ever suggested to the plaintiff that he ought not to go upon the roof, nor that it was unsafe; that the same was true as to some of the defendant's other employees; and that the plaintiff was unaware of such unsafe and defective condition of the roof at the time he went out upon it for his pail, as mentioned.

We are constrained to hold that the evidence is sufficient to take the questions of the defendant's negligence and the plaintiff's contributory negligence to the jury. In other

words, we must hold that the evidence is sufficient to support the verdict. It is contended that the defendant owed no duty to the plaintiff to keep the roof at the place of the accident in safe condition. But it is obvious that the duties of the plaintiff and other employees of the defendant required them, from time to time, to go upon the roof at or near that place, and that the plaintiff was in the pursuit of his duties at the time he so went there. The defendant was bound to furnish the plaintiff with a reasonably safe place in which to work, or to notify him of any latent or unforeseen danger. *Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520; *Nadau v. White R. L. Co.* 76 Wis. 127. Here the danger was hidden, and could only be known to those who understood the effect of leaving ashes, dirt, etc., to accumulate upon the roof for a long time.

Exception is taken because the court submitted to the jury the question whether the defendant was negligent in allowing the roof to become weak and out of repair and incapable of supporting the weight of a man. But it follows from what has been said that such exception must be overruled. The same is true in respect to the portion of the charge to the effect that it was the duty of the defendant to keep the roof reasonably safe, or warn its employees of the danger.

We cannot say that the damages, as fixed by the court, are excessive. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.