THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. PATRICK B. LANNIGAN.

No. 7776.

| 56 | 109 |
| 69 | 123 |

| 56 | 109 |
| e74 | 92 |

| 56 | 109 |
| 76 | 113 |

1. INJURY TO BRAKEMAN—*Defective Lantern.* L., while in the employ of the defendant company as a brakeman, in attempting to couple two cars, constructed with double dead-woods, on a dark night, had his right hand crushed, because his lantern, furnished him by the company, was defective and failed to furnish proper light. The evidence failed to show, and the jury were unable to determine, in what particular the mechanism of the lantern was defective, but it was clearly shown that it smoked the globe and did not give a good light. *Held,* That the failure to establish the particular defect which caused the lantern to smoke the globe is not fatal to the plaintiff's right of recovery.

2. NEGLIGENCE OF FELLOW SERVANT, *no Bar to Recovery.* The injury for which the plaintiff sues was received in Missouri, where the common-law rule that the master is not liable to the employee for injuries occasioned by the negligence of a fellow servant obtains. *Held,* That, where the proximate cause of the injury is

the failure of the employer to furnish the employee with a suitable lantern with which to do the work, and which it was his duty to furnish, the fact that a co-employee was also guilty of negligence contributing to the injury does not necessarily bar a recovery.

3. DEFECTIVE TOOL—*Reasonable Time.* Where an instrument, tool or appliance furnished by the employer is defective, and he promises to replace the article with a suitable one, the rule that the employer is entitled to a reasonable time thereafter to fulfill his promise does not make it incumbent on the employee either to quit the service or assume the risk attending the use of the defective article immediately on the expiration of the time when the employer ought to have fulfilled his promise. In doubtful cases it is for the jury to determine what is a reasonable time within which each party ought to act.

4. SPECIAL QUESTIONS—*Answers, Construed.* Where the jury answer special questions, submitted at the request of the defendant, "We do not know," or "We cannot determine," the answer must be taken as one unfavorable to the plaintiff when the judgment is in his favor, but when, if so answered, they are not inconsistent with the general verdict, a judgment rendered upon it will be upheld.

5. ———— *Jury, not to Speculate or Guess.* Only such questions as can be fairly and intelligently answered should be submitted to the jury. The court ought always to eliminate from special questions asked all such as are unfair, or call on a jury to speculate or guess as to what might or might not have happened under supposed contingencies.

*Error from Johnson District Court.*

ACTION by Patrick B. Lannigan against The Atchison, Topeka.& Santa Fe Railroad Company to recover damages for personal injuries. Plaintiff recovered judgment and defendant brings the case to this court. All the material facts are stated in the opinion herein, filed November 9, 1895.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*A. Smith Devenney,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: The defendant in error, who was plaintiff below, was employed as a brakeman on the railroad operated by the defendant, on a freight-train running between Argentine, Kan., and Marceline, Mo. At 2 o'clock in the morning of March 3, 1890, at Norborne, Mo., his right hand was crushed between the dead-woods of two freight-cars, which he was coupling. This action was prosecuted to recover damages for the injury then received. The petition is very long, and alleges many acts of negligence as grounds of recovery, but at the opening of the trial the plaintiff announced that he would rely solely on the allegations of negligence in furnishing the defendant a defective lantern with which to perform his work. All other charges of negligence were eliminated from the case. The jury rendered a general verdict in favor of the plaintiff for $6,300, and also returned answers to special questions submitted by both parties.

It appears that the plaintiff had been employed by the defendant 53 days. He had never been furnished with a copy of the rules. The lantern furnished him, after he commenced working on the train, of which Clark was conductor, was an old one. It smoked the globe so that it gave a poor light. Five or six days before he was hurt Lannigan complained to the conductor, and requested that a good lantern be furnished him. This the conductor promised to do, and directed him to continue to use the old one until a new one could be obtained. On the night of the accident the train started from Marceline. The lantern was cleaned before the train left Marceline, and the plaintiff cleaned it again by wiping the globe and scraping the burner at Carrollton, about half an hour before the accident.

At Norborne it became necessary to couple two freight-cars equipped with double dead-woods, which rendered the task more dangerous than where the cars are built with single dead-woods. The night was dark, and his lantern had again become smoked to such an extent that he could not see clearly. He did not know that the moving car had double dead-woods, and in the dim light did not see it until after the coupling was made and his hand crushed.

It is contended that, under the findings of the jury, the plaintiff was not entitled to judgment. The first and second questions submitted by the defendant, and the answers of the jury to them, are as follows:

"1. Ques. If you find the lantern used by the plaintiff at the time he was injured was defective, then state in what particulars it was defective. Ans. We cannot determine.

"2. Q. Was the burner in the lamp of said lantern or any part of it defective? If so, state what the defect was. A. We cannot determine."

On these findings counsel argue that the answers given by the jury are equivalent to saying that no defect existed. The plaintiff on the witness-stand had testified, "I couldn't tell you what the defect was," and there was no evidence showing wherein the mechanical construction of the lantern was faulty, but it was abundantly shown that the globe of the lantern was soon dimmed with smoke so that it gave but a poor light. We do not think it was absolutely essential to the plaintiff's right of recovery that he, or any witness called by him, should be able to state definitely and correctly why the lantern failed to burn properly. It is ordinarily very easy to determine whether a lantern works satisfactorily or not, but it would require an expert to find and remedy the particular defect in one.

1. Injury to brakeman—defective lantern.

A watch might be utterly useless as a timepiece, and fail to run at all, and a witness knowing the fact be yet unable to point out the particular part of the mechanism which was defective. It certainly would not be claimed that, because a witness was unable to name the mechanical defect in the watch, he could not testify that it was defective. It was sufficient to show that the lantern did not give a reasonably good light, and was unfit for a brakeman's use. It would have been absurd to require the jury to state what defect caused the lantern to smoke.

The plaintiff's injury was received in Missouri, where the common-law rule with reference to the liability of an employer to his employee for injuries occasioned by the negligence of a fellow servant obtains.

The jury answered the twenty-fifth and twenty-sixth questions, asked by the defendant, as follows:

"25. Ques. Was the engineer guilty of any negligence causing the plaintiff's injury? Ans. Yes.

"26. Q. If you say the engineer was guilty of negligence, then state what his negligence was that caused the injury of plaintiff. A. In failing to obey the stop signal."

It appears that the cars pushed by the engine were going at a rather rapid rate for making a coupling, and the plaintiff in error claims that this finding of the jury is to the effect that the plaintiff's injury resulted from the negligence of the engineer, who was a fellow servant, and not from the defective lantern. In this, as with all similar accidents, many circumstances concurred in producing the injury. There were the double dead-woods on both cars, greatly increasing the difficulty in making a coupling and withdrawing the hand without injury. There was the stationary car on the one side, and the moving car on

the other. It was absolutely indispensable that one car should be pushed up to the other in order that the coupling might be made at all. Every increase of speed in the moving car diminished the time allowed the brakeman to withdraw his hand. The coupling could be made when the car was moving at the slowest possible rate with something approximating absolute safety. With the car moving at a very high rate of speed, inevitable accident would follow from the brakeman holding the link until the coupling was made. Between these two limits, and with a movement ordinarily deemed safe and proper, couplings are usually made. There is no finding by the jury nor is there any showing in the evidence that this coupling could not have been made with safety at the rate of speed at which the car was in fact moving, if the plaintiff had had sufficient light to see the double dead-woods and determine more accurately the speed of the moving car. Nor can we presume that, if he had been able to ascertain the exact measure of his danger, he would have incurred the risk. The jury have found that the

2. Negligence of fellow servant, no bar to recovery.

defective lantern which failed to give him a proper light was the proximate cause of the injury. The fact that the engineer was guilty of negligence contributing to the injury does not take away his right of recovery under these circumstances.

A very ingenious argument is made in support of the claim that, if the lantern was defective, the plaintiff was guilty of contributory negligence in using it. It is said that the plaintiff has alleged in his petition that the lantern was defective, and that the defendant failed to furnish a good one after the lapse of a reasonable time, and it is contended that the defendant having so failed, the plaintiff assumed all risk after

such failure. The logic of this reasoning would lead to the conclusion that there could never be any liability on the part of the employer for failure to replace defective tools or machinery with good ones. He must first have notice of the defect, then have a reasonable time in which to remedy it before any liability would attach. If, then, the employee assumes all risk from that time on, there is no period during which the employer is liable. This is a wrong conclusion. The employer is bound to act within a reasonable time after notice. The employee has still a reasonable time after the employer is in default before he is required either to quit the service or assume the risk. This case is quite different from that of *Morbach v. Mining Co.*, 53 Kan. 731. The demand made on the conductor for a good lantern was only five or

3. Defective tool—reasonable time.

six days before the injury, and we cannot say, as a matter of law, that it was unreasonable and negligent for the plaintiff still to continue in his employment using a defective lantern for that length of time. The evidence also clearly shows that lanterns are furnished by the company, and that the plaintiff could only procure one through the conductor, who for that purpose was the representative of the company. The proof that the plaintiff complained of the one he had and requested another is clear, and not directly contradicted by anyone.

Complaint is made of the thirteenth instruction, which is as follows :

"Two sets of questions are submitted to you to be answered. It is your duty to answer each question, and that your answer be written under the question and signed by your foreman in the same manner that your general verdict is signed. You have no right to ignore the questions submitted to you by the court,

but it is your duty to consider them, and to answer them correctly, if you can do so from the evidence. It would not be proper for you to state 'We do not know'; but if, after considering the questions in their order, there are any of them which you cannot answer from the evidence, let your answer be, 'We cannot determine from the evidence.' But, whatever your answer may be, it should be reduced to writing and signed by your foreman, as before stated. While you are not required to do impossibilities, you have no right to ignore or neglect the questions that are propounded to you, but it is your duty to consider them candidly and carefully, and to answer them, if they can be answered."

This instruction is very similar to the one given in the case of *A. T. & S. F. Rld. Co. v. Cone*, 37 Kan. 567, as well as that in *L. T. & S. W. Rly. Co. v. Jacobs*, 39 id. 204, and ought not to have been given. To determine whether this instruction has been materially prejudicial in its effect on the rights of the defendant we must look to the answers returned. We have already decided that the defendant was not entitled to definite answers to the first and second questions. The fourteenth question, to which a similar answer was returned, is in the same line. The only other question to which a similar answer was given is the thirty-sixth, which reads: "Were the cars moving back at a dangerous rate of speed for the plaintiff to make the coupling at the time he was hurt?" We think counsel is correct in saying that this question must be treated as having been answered

4. Special questions— answers, construed.

favorably to the defendant, and that answer would be "Yes." But such an answer does not avail the plaintiff in error, for it falls short in many particulars of a finding of contributory negligence on the part of the plaintiff. With a good light he might have discovered the fatal

double dead-woods on the approaching car, and might also have better judged of the speed at which it was approaching, or he might have made the coupling and withdrawn his hand in safety if fully apprised of his danger. The tenth instruction is not open to the objection urged against it, for it clearly informs the jury that the plaintiff cannot recover if his negligence contributed to the injury. Other instructions given and refused are complained of, but we find nothing requiring special mention.

We think the court properly refused to submit to the jury the twenty-first, twenty-second and twenty-third questions, because they required the jury to guess what might have happened in certain contingencies. The twenty-first reads: "If the plaintiff had withdrawn his hand after guiding the coupling link to its place instead of raising it up, would he have avoided the injury?" It is quite probable that if he had withdrawn his hand before the cars came together, he would not have been injured. Some other minor matters are mentioned in the brief, but they are not of sufficient importance to be stated here.

5. Jury, not to speculate or guess.

The judgment is affirmed.

All the Justices concurring.