A. P. Huggard, Appellee, v. The Glucose Sugar Refining Co., Appellant.

**Master and servant:** injury to servant: evidence. In an action
1   for injury to an employé caused by the falling of a substance
through an opening in an upper floor, evidence that the action
of the wind and machinery upon the building had a tendency
to gradually move a loose substance toward the opening in
the floor was competent, although there may have been no wind
and the machinery may not have been in operation at the
precise time of the accident.

**Evidence:** tests: discretion. The admission of experimental or
2   demonstrative evidence in the nature of a test is largely dis-
cretionary and where the conditions cannot be accurately re-
produced its refusal is not an abuse of discretion.

**Evidence:** assumption of risk: promise of repair. An employé
3   seeking to meet a claim of assumption of risk with a promise
of the employer to repair a defect in the premises, may state
that he relied on the promise even though the jury may be re-
quired to pass on the question.

**Same:** condition of premises. Under the record, evidence of the
4   conditions which caused the injury as they existed prior to the
complaint of the employé with respect thereto, and of the con-
ditions prior to the accident, was admissible.

**Exclusion of evidence:** indefiniteness. The exclusion of evidence
5   which is indefinite in point of time is not prejudicial, especially
where the witness subsequently disclaimed any knowledge of
the matters inquired about at the precise time in question.

**Reasonable care.** Reasonable care in selecting his route leading to
6   a dangerous place about the premises is all that is required of
an employé.

**Assumption of risk:** instructions. In an action for injury to an
7   employé by reason of defective premises where the defendant
relies on a plea of assumption of the risk arising from the
defect the court need not instruct, in the absence of request,
regarding the assumption of risks which inhere in the employ-
ment; but instructions requiring defendant to provide a safe
place to work and placing the burden on plaintiff to establish
defendant's negligence and that the premises were not in a
safe condition are sufficient.

**Same:** COMPLAINT: PROMISE OF REPAIR. The complaint of an employé that the premises about which he is at work are in a dangerous condition need not be with express reference to his danger, neither need the promise to repair be made expressly for his benefit, but any notice which plainly conveys to the employer the idea that a defect exists and he desires it remedied, with a promise of repair which may be implied from what is said at the time, are sufficient to relieve the employé from an assumption arising from such defect.

**Instructions:** CONTRIBUTORY NEGLIGENCE: DEFINITION. Where contributory negligence is properly defined and the correct standard given in one instruction, the court need not define the term in the other instructions referring thereto.

**Damages:** FUTURE SUFFERING: PROOF. Damages are recoverable for future pain and suffering and a plaintiff is only required to prove reasonable certainty of such an event.

**Instructions:** NEGLIGENCE OF FELLOW SERVANTS. The duty of the master to furnish the servant a safe place to work cannot be delegated, and the rule as to fellow servants does not apply.

**Unseen accident:** CIRCUMSTANTIAL PROOF. The cause of an unseen accident may be inferred from proven circumstances which unexplained would be sufficient to support a verdict. In the instant case the evidence is held sufficient to require a submission and to support a verdict based on a finding that plaintiff was injured by an iron pipe accidentally dislodged from an upper floor and falling through an opening struck him while on a floor below, rather than by an unseen assailant or an accidental fall.

**Negligence of master:** CONCURRING CAUSES. Where the master is negligent in failing to furnish a safe place to work, he will not be relieved from liability for injury to an employé, by showing that the act of a co-employé concurred with his negligence in producing the injury.

**Assumption of risk.** A servant does not assume the risks incident to his employment unless he knows and appreciates the full extent of the danger and voluntarily puts himself in the way of that danger, or impliedly subjects himself to it.

**Contributory negligence.** Under the evidence in the instant case the question of whether an employé was guilty of contributory negligence in passing along a dangerous route through the building in which he was employed was for the jury.

**Safe place to work:** COMPLAINT: TO WHOM MADE: SUFFICIENCY. Complaint of a danger incident to a servant's employment may

be made to a night superintendent under whom the foreman and employés work; and under the evidence the jury was warranted in finding that plaintiff's complaint was on his own behalf.

**Promise of repair:** SUFFICIENCY: RE-ASSUMPTION OF RISK. A promise of repair made in response to the complaint of a servant as to unsafe premises "that he would see to it and have it fixed" is sufficient to relieve him from an assumption of the risk; and under the evidence the question of whether he re-assumed the risk by remaining in the employment was for the jury.

**Same.** Where a promise of repair has been made in response to a complaint of dangerous premises a servant has the right to rely on the promise.

**Damages:** PERSONAL INJURY: EXCESSIVE VERDICT. A verdict for $32,916 is held not excessive where plaintiff was a man twenty-seven years old, earning $1,100 per year and his injuries, growing out of his employer's failure to furnish him a safe place to work, resulted in total paralysis from the small of his back to his toes rendering him helpless and subject to great pain.

*Appeal from Scott District Court,* Hon. A. J. House, Judge.

WEDNESDAY, OCTOBER 24, 1906.

REHEARING DENIED, FRIDAY, JANUARY 18, 1907.

ACTION to recover damages for injuries received by plaintiff while in defendant's employ due to the fall of a piece of gas pipe from an upper story of defendant's building upon him. There was a trial to a jury resulting in a verdict and judgment for plaintiff in the sum of $32,916, and defendant appeals. *Affirmed.*

*G. W. Kretzinger, Murphy & Susemihl,* and *Cook & Dodge,* for appellant.

*Ely & Bush* and *M. J. Wade,* for appellee.

DEEMER, J.— That plaintiff received very serious and permanent injuries resulting from the fall of a piece of

gas pipe while he was engaged in defendant's employment, producing practically complete paralysis of the lower half of his body, ·is virtually conceded, or at least established by the verdict of the jury upon sufficient evidence.  Various rulings made by the court during the trial of the case below are complained of and it is also strenuously argued that the verdict has no support in the evidence, was the result of passion or prejudice, and that considering the whole record no judgment could legally be rendered against the defendant.  We find something like twenty-four assignments of error in defendant's argument, the more important and controlling of which we shall consider during the course of this opinion.  Claimed errors committed during the trial will first be considered.  To this end a short statement of the facts relied upon by the plaintiff will be necessary.

In appellant's plant there were three or more buildings: One, the machine shop, in which was plaintiff's headquarters; another, what is called the "boneblack building," or "bone house," one hundred and fifty or one hundred and seventy-five feet from the machine shop; and the third, the refinery building between the machine shop and the boneblack building.  Plaintiff received his injuries in the boneblack building.  He had been in defendant's employ for some-thing like two years, but, on account of injuries or illness, had been off duty from September 8th until October 13th of the year 1903.  Plaintiff was employed as a machinist, and, at the time he received his injuries, was what was called "night machinist," compelled to go wherever directed by the superintendent, for the purpose of: watching and re-porting the condition of the machinery, and repairing or di-recting the repairs thereof.  The "bone. house," as it is called, had at least four ·floors, and in the basement thereof was a water closet for the use of employés.  And nearly over this closet, directly over the pathway leading thereto, and in the first floor, was a hole or opening fourteen or sixteen by twenty-four or twenty-six feet.  There was no second

floor in the building, but in the third floor, and almost directly over the hole in the first floor, was another opening almost as large as in the one in the first. There was no corresponding opening in the fourth, or other higher floors. Upon the third floor, and close to this hole or opening, was a pile of ground bone, pieces of pipe, belting and other rubbish. While there was a necessity of these openings, for the purpose of installing machinery, that necessity in no matter prevented or interfered with the protection or guarding of the openings in carrying on the work at hand. There was also a closet on the first floor of the refinery building, but it was choked up and out of working order, and there was a closet in that building on the second or third floor; but there was no closet in the machine shop. On the night of November 14, 1903, plaintiff was working upon what are called " steep pans," on the first floor of the refinery building, and, while engaged in that work, was called to a closet three times during the evening, he having taken a physic some time before. On the last trip he went to the closet on the first floor of the refinery building, and finding it locked, started for the " bone house," and as he says " hustled too," passing in on the first floor going from that to the basement and thence to the water closet in the corner of that building, following what is claimed to have been the usual path, to that utility. While returning from the closet, following this claimed usual path, he was struck in the back by some hard substance, resulting in the injuries of which he complains. It is said that this hard substance was an iron gas or water pipe about three inches in diameter and twelve inches long, and that it fell from the third story of the building through the opening in that floor and the opening in the first floor. The negligence charged is leaving the openings in the floors without proper guards or barricades to prevent objects falling through the same. It is also claimed that the piece of iron pipe came from the third story of the building by reason of these openings, and of the failure to supply a

guard.   Defendant's answer was a general denial and also a plea of assumption of risk due to plaintiff's knowledge of the condition of the premises and of the openings in the floors.   To this plaintiff replied that he had complained to defendant of the dangerous condition of the premises, and was promised and assured that the same would be remedied. The action is manifestly predicated upon the thought that defendant did not furnish plaintiff and its other employés a safe place to work.

One of the theories of the plaintiff was that the piece of pipe was in or upon a pile of bone dust upon the third floor, and that through the vibration of the building by wind, or the operation of the machinery, it was gradually moved toward the opening in the floor, and fell through, and it asked various witnesses as to the effect of the wind and of the operation of machinery upon the building and upon objects upon the floor of the third story.   This was legitimate testimony, although there was no evidence that the plant was running that evening, or that there was any wind blowing.   Rules of evidence are said to be based upon logic, and, if that be true, this testimony was clearly admissible in support of plaintiff's theory.   While the wind may not have been blowing or the machinery running at the exact time the pipe fell, its effect upon objects upon the floor at other times was perfectly proper.   It may have caused the pipe to roll too close to the edge of the opening, so that it fell by reason of the crushing down or removal of some small obstacle which held it temporarily.   At any rate, this was proper evidence for the jury.

1. MASTER AND SERVANT: injury to servant: evidence.

It seems that defendant made some tests as to the effects of vibrations upon a pile of bone dust and a piece of iron pipe for the purpose of showing that the pipe did not fall in the manner claimed.   It offered to show the results of these tests, but was not permitted to do so.   There was no abuse of discretion here.

2. EVIDENCE: tests: discretion.

Such testimony which has been called experimental or demonstrative is not universally admitted. The matter of its admission rests very largely in the discretion of the trial court. *Homan v. Franklin County,* 98 Iowa, 692; *People v. Woon Tuck Wo,* 120 Cal. 294, (52 Pac. 833). The trial court may well have found in this case that the experiment was too uncertain and inconclusive to justify the results thereof being admitted in evidence. *R. R. Co., v. Mugg,* 132 Ind. Sup. 168, (31 N. E. 564); *McMurrin v. Rigby,* 80 Iowa, 322; *Com. v. Allen,* 128 Mass. 46, (35 Am. Rep. 356); *Libby v. Scherman,* 146 Ill. 540, (34 N. E. 801, 37 Am. St. Rep. 191). The conditions manifestly could not be accurately reproduced.

Plaintiff was asked if he relied upon the claimed promise to repair and was permitted over defendant's objections to answer that he did. The ruling was manifestly correct. This was a question of fact which could be proved in no other way. It was not, as defendant contends, the very issue upon which the jury was to pass, but if it were, the testimony was clearly admissible. *Boddy v. Henry,* 113 Iowa, 462; *Taylor v. Star Coal Co.,* 110 Iowa, 40.

3. EVIDENCE: assumption of risk: promise of repair.

Plaintiff testified as to the condition of things on the third floor, shortly before he says that he complained to defendant's agent, and of the situation about five days before he was hurt. Other witnesses were also permitted to testify as to conditions before the injury. Under the record this testimony was clearly competent.

4. SAME: condition of premises.

A witness was asked as to whether he saw any one go to the closet on the first floor of the refinery building on or before November 14, 1903. This was objected to, and the objection sustained. The ruling was right because indefinite as to time, if for no other reason. The witness further testified that he knew nothing

5. EXCLUSION OF EVIDENCE: indefiniteness.

of its condition on the day of the accident. There was no prejudicial error in rulings on evidence.

II. We come now to the instructions. Five of those given are complained of; and, of those refused, error is assigned as to but one.

The first instruction complained of related to plaintiff's duty to take another route in returning from the water closet, and left it to the jury to say whether, under all the circumstances, in the exercise of reasonable care and prudence, he should have selected another route, concluding with the statement that, if the jury found he should have taken another one, then he could not recover. The instruction was clearly correct in so far as it went; and defendant has no cause for complaint. Nothing said in *Parkhill v. Brighton,* 61 Iowa, 103, or *Hartman v. Muscatine,* 70 Iowa, 511, runs counter to this. As we understand appellant, the contention here is not that the instruction abstractly considered is wrong; but that, under the facts, plaintiff was as a matter of law guilty of contributory negligence.

6. REASONABLE CARE.

The twenty-first instruction relates to assumption of risk, and complaint, and promise of repair. It is contended that the court did not properly distinguish between those ordinary risks incident to the employment, and the assumption of risk growing out of defendant's negligence. True, there is such a distinction; but as to the former, the doctrine of complaint and promise to repair has no application. The instruction complained of has no reference to this, but to assumption of the risk incident to defendant's negligence. So construed, there was no error. Moreover, defendant's answer was a plea, not that the risk was one of the incidents of plaintiff's employment, but that he assumed the risk growing out of the dangerous and defective condition of the premises. Further it is said that the instruction cast the burden of proof upon defendant to show that plaintiff assumed the risk incident to his em-

7. ASSUMPTION OF RISKS: instructions.

ployment. But this is not so. Indeed this instruction does
not cast the burden upon defendant to show that plaintiff
assumed the risk of defendant's negligence. Nothing is said
in the instruction regarding the burden of proof. Other
instructions placed upon plaintiff the burden of proving de-
fendant's negligence and that the premises were not in a
reasonably safe condition at the time plaintiff received his
injuries. Defendant asked no instructions regarding as-
sumption of the risk of ordinary dangers, and is in no posi-
tion to complain. The court did instruct, as to defendant's
duty, to provide a reasonably safe place to work; and, in the
absence of request for an instruction relating to assumption
of risk of ordinary dangers, there was no error. As said in
*Sankey v. R. R.,* 118 Iowa, 39: "Assumption of risk by
virtue of the employment inheres in plaintiff's case, and is
generally sufficiently covered by the instructions relating to
the question of defendant's negligence." This is especially
true where no specific requests are made.

One of the instructions with reference to complaint
and promise to repair reads as follows: "(22) The plain-
tiff claims that on November 9, 1903, he complained to

8. SAME:
complaint;
promise of
repair.
James Schon, the night superintendent of the
defendant company, of the unguarded condi-
tion of the opening in such third floor, and
that he promised to remedy or fix it. If you find that plain-
tiff, on or about such time, called the attention of said Schon,
as an officer of said defendant, to the unguarded condition
of said floor, and, in so doing, gave the said Schon to reason-
ably understand that he objected thereto, on his own behalf,
and as dangerous; and find that the said Schon, as such su-
perintendent, promised or gave plaintiff to reasonably under-
stand that such defective conditions would be remedied, then
such a complaint and promise to repair, if so established,
would be sufficient within the meaning of the law as to such
condition so complained of to suspend the waiver of risk on
the plaintiff's part otherwise arising if no such complaint

and promise were made. The plaintiff claims that he also so notified one Maker in September, 1903; but you should not take such claim into consideration in determining the above-mentioned questions, by reason of the remoteness of the time thereof."

The exact complaint made of this is that it is incorrect as an abstract proposition of law, in that such complaint and promise must be more specific than the instruction requires. It is said that the complaint must be with exact reference to the employé's work and comprehend his danger, and not danger to another, or others; and that the promise to repair must be definite and for the benefit of the employé. It will be noted that the instruction confines the complaint to one made on behalf of the employé, so that this part of defendant's insistence is fully met. If, then, the complaint was on his own behalf, it must necessarily follow that the promise to repair, if one was then made, must have been in answer to the complaint, and for the benefit of the employé — at least he would be justified in such circumstances in relying upon it. Whether or not there was sufficient evidence to justify such instruction is another matter, which will hereafter be considered. We have many times held that the complaint need not be a formal one. Any notice, so long as it plainly conveys to the master the idea that the defect exists, and that the employé desires its removal, is sufficient. *Kroy v. Railroad,* 32 Iowa, 365; *Stoutenburgh v. Dow,* 82 Iowa, 179; *Pieart v. Railroad,* 82 Iowa, 148. Again the promise to repair need not be express — it may be an implied one, from what is said at the time complaint is made. See the Stoutenburgh Case, *supra.* This is the reasonable and humane rule as between master and serv- -ant, plainly demanded on account of the dependent condition of employé, and, were there no authority for the rules above stated, we should not hesitate to adopt them.

One of the instructions with reference to contributory negligence reads in this wise: "(18) Although you find the

plaintiff was injured as alleged, and through the negligence of defendant, still, unless you find he was not guilty of any negligence that directly contributed to his injury, he cannot recover. By contributory negligence is meant such negligence or want of reasonable care on the part of the plaintiff as was a cooperating cause, and was directly instrumental in causing or bringing the injuries in question upon him, and may consist in his voluntarily and unnecessarily exposing himself to the danger, or in failing to avoid danger when the danger is known to him, or when, by the exercise of reasonable care and prudence on his part, he would have discovered the danger in time to have avoided it. It follows from this that, although defendant may have been negligent at the time, yet if plaintiff, through his own negligence, directly contributed to his injury, he cannot recover."

*9. INSTRUCTIONS: contributory negligence: definition.*

It is argued that this furnishes no standard for the jury to follow. It does say that the jury must find that plaintiff was not guilty of any negligence that directly contributed to his injury. In other instructions negligence was properly defined and the correct standard given, and there was no need for repeating this whenever the term was used. All the instructions should be considered together, and, when this is done, there was no error.

In the instruction relating to the measure of damages is found this, " If you find he will suffer pain and anguish by reason of said injury in the future, you may allow him therefor." This was more favorable to defendant than it was entitled to. All that plaintiff was required to prove was, not absolute certainty of future pain, etc., but reasonable certainty of such an event. Under the instruction the jury was not permitted to consider the matter unless it found that plaintiff would suffer in the future. In other words, absolute certainty was required. See *Bailey v. Town of Centerville*, 108 Iowa, 20. Further, it is argued that damages cannot

*10. DAMAGES: future suffering: proof.*

be received for future pain and anguish. That is not the
rule in this State. *Ferguson v. County,* 57 Iowa, 601; *Jordan v. R. R.,* 124 Iowa, 177, and other of the more recent
cases from this court, which may easily be found. Further,
it is contended that there was no evidence to justify such an
instruction; but this is manifestly untenable.

Defendant asked this instruction: "(3) The court instructs the jury that if you believe from the evidence that,
at the time, and before the happening of the accident in

**11. INSTRUCTIONS: negligence of fellow servants.** question, the defendant had in force certain
rules and regulations for the government of its
employés, which rules and regulations required
its employés to keep the floors of the boneblack building, including the third floor thereof, clean and free from all loose
articles and materials, including pipes, etc., and that these
rules and regulations were violated by the fellow servants
of plaintiff, and, in consequence thereof, a certain pipe
fell through the opening of the third floor of the boneblack
building, and struck and injured plaintiff, then the defendant is not liable in this case, and your verdict should be for
the defendant."

Complaint is made of the court's refusal to give it. As
applied to the facts of this case, the instruction was properly
refused. The duty of the master to furnish the servant a
safe place to work cannot be delegated, and the rule as to
fellow servants does not apply. This is so fundamental as
to need no citation of authority in its support. Moreover,
there was no evidence of any rules and regulations adopted
by defendant, such as are referred to in the instructions.

III. The other questions aside from the size of the
verdict have reference to and are to be determined from a
consideration of the testimony. The fundamental proposi-

**12. UNSEEN ACCIDENT: circumstantial proof.** tion presented is that plaintiff's case is bottomed upon conjecture and surmise rather
than proved facts and circumstances. The
matter is fully presented in this quotation from appellant's

argument: "The only reasonable inference from the evidence is that appellee being sick upon the occasion in question, upon his return from the water closet stumbled in the dark, and fell into the elevator pit and received the injuries of which he complains. Or, in view of the undisputed evidence that the boneblack building was not in operation on the night of the injury, that appellee was struck by a pipe which was in the hands of some person unknown to appellee."

Whether or not defendant was negligent in the respects charged in the petition, and whether or not this negligence was the proximate cause of the accident, were primarily questions for the jury. Upon the first proposition there was sufficient evidence to justify the court in submitting the issue. Upon the second, the rule no doubt is that a theory cannot be said to be established unless the facts relied upon are of such a nature, and so related to each other, that it is the only conclusion which may reasonably or fairly be drawn therefrom. *O'Connor v. Railway,* 129 Iowa, 636, and cases cited. But it is equally well settled that the cause of an accident may be inferred from circumstances, and the law itself sometimes raises inferences from proved facts; that is, the proved facts make out a *prima facie* case, sufficient to justify a verdict, unless the defendant goes ahead with his side of the case, and produces sufficient evidence to explain or overcome these facts. This rule has culminated in the Latin maxim, "*res ipsa loquitur*"— the thing speaks for itself. Just when the maxim applies is a question of some difficulty; but that it does apply to this case we have no doubt.

It was the legal duty of defendant to furnish its employés a safe place to work, and this included, when the purpose was once undertaken, a reasonably safe place to go to answer to the calls of nature. Now, while it is true that no one saw the iron pipe fall, no one saw plaintiff struck and plaintiff himself did not see the substance which struck him,

yet it is shown that plaintiff was felled to the ground by a very severe blow — one which rendered him unconscious.   It was further shown that there was no iron pipe near where plaintiff fell when he was struck, and that immediately thereafter this piece of pipe was found near where the accident occurred.   The blow was such that the iron pipe must have had great momentum, greater than would result from a fall from the first floor.   Plaintiff was in such a position that no one could reasonably have injured him in the manner in which he was by striking a blow.   There was no other person than employés in the building, unless he was secreted when the accident occurred.   There was a pile of bone dust, refuse, scraps of iron, etc., on the third floor and close to the opening on the third floor.   And a pipe of the description of the one found near where plaintiff was injured was lying on the bone pile for some days and at least an hour before the injury. Plaintiff was immediately under this opening in the first and third floors when struck.   These and other facts, which might be recited to our minds, clearly bring the case within the maxim quoted.   Without quoting from them, it is sufficient to cite the authorities both English and American, which sustain this conclusion.   See *Scott v. London Docks Co.*, 3 H. & C. 596; *Byrne v. Boadle*, 2 H. & C. 722; *Kearney v. London Co.*, (L. R.) 5 Q. B. 411; *Jager v. Adams,* 123 Mass. 26 (25 Am. Rep. 7); *Mullen v. St. John,* 57 N. Y. 567 (95 Am. Rep. 530); *Volkmar v. Railroad Co.*, 134 N. Y. 418 (31 N. E. 870, 30 Am. St. Rep. 678); *Gleeson v. Railroad,* 140 U. S. 435 (17 Sup. Ct. 859, 35 L. Ed. 458); *Engstrom v. Iron Co.*, 87 Wis. 166 (58 N. W. 241); *Ford v. Lyons,* 41 Hun (N. Y.) 512; *Fink v. Ice Co.*, 84 Iowa, 321; *McCauley v. Norcross,* 155 Mass. 584 (30 N. E. 464); *Shoemaker v. Lumber Co.*, 27 Wash. 637 (68 Pac. 380); *Meier v. Morgan,* 82 Wis. 289 (52 N. W. 174, 33 Am. St. Rep. 39); *Barnowski v. Helson,* 89 Mich. 523 (50 N. W. 989, 15 L. R. A. 33), and note.   *Alpern v. Churchill,* 53 Mich. 607 (19 N. W. 549); *Griffin v. Manice,* 166 N. Y.

188 (59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep.
·630); ·Breen v. R. R., 109 N. Y. 297 (16 N. E. 60, 4 Am.
St. Rep. 450); Mulcairns v. Janesville, 67 Wis. 24 (29 N.
W. 565); McGovern v. R. R., 123 N. Y. 280 (25 N. E.
373); Pioneer Co. v. Howell, 189 Ill. 123 (59 N. E. 535).
Many of these cases are very closely in point. Under the
facts and rules above recited, the case was clearly for a jury
no matter what the showing on defendant's part with respect
to this issue.

But, aside from the maxim to which we have referred,
we think there was enough testimony to take the case to the
jury upon the questions as to defendant's negligence, and
as to its responsibility for plaintiff's injuries. See McCau-
ley v. Norcross, supra. In this connection we quote this
rule from Wabash v. Black, 126 Fed. 721 (61 C. C. A. 639),
which appellant's counsel approve. " The mere suggestion
of other possible theories does not make it a matter of specu-
lation or conjecture. To be entitled to consideration, there
must be evidence reasonably tending to sustain them."

Defendant's contention that a stranger may have delib-
erately struck and injured plaintiff has nothing whatever in
its support. And the same observation may be made of its
suggestion that plaintiff may have .stumbled and fallen and
produced the very severe blow received by him in the small
of the back.

We may as well here correct a statement heretofore
made, to the effect that no other person was in the building
when plaintiff was injured. That is not exactly true·; but,
13. NEGLIGENCE    so far as this case is concerned, that point is
OF MASTER:      immaterial, for the conduct of each person
concurring
causes.         present was fully accounted for, and defendant
does not claim that any of them had anything to do with the
injury, save that one of them may have disturbed the bone
pile a short time before plaintiff was injured. But it does
not claim, nor can it well do so, that it is not responsible be-
cause the act of any employé concurred with its negligent

act in producing the injury.    The negligence charged was in having the openings in the floors unguarded and unbarricaded.    If another employé negligently, or otherwise caused the iron pipe to fall, and it would not have done so but for defendant's negligence, defendant cannot shift responsibility to its employé.    *Gould v. Schermer,* 101 Iowa, 582; *Parmenter v. City,* 113 Iowa, 301; *Osborne v. Van Dyke,* 113 Iowa, 560; *Rice v. Whitley,* 115 Iowa, 750; *Overhouser v. American Co.,* 118 Iowa, 422; *Fishburn v. Railway,* 127 Iowa, 499.    True the appellant cites in this connection, *American Bridge Co. v. Seeds* (C. C. A.), 144 Fed. 605; but that case is not in point.    Even if it were, it runs counter to the views expressed by this court in the cases above cited.    Ordinarily the question of proximate and concurring or independent causes under facts such as are here shown is for a jury.    The duty, to furnish a safe place to work, involves care in inspection as well as in construction, and if defendant permitted and allowed matter to accumulate upon the third floor, which was likely to fall through the opening, or failed to remove such matter after the lapse of a reasonable time for its discovery, it was negligent; and the mere fact that some other cause co-operated or concurred in producing the result will not relieve it.

IV.    Next, it is argued that plaintiff assumed the risk arising from the dangers complained of, and that in any event he was guilty of contributory negligence precluding a recovery.    This argument is not convincing.    The doctrine of assumption of risk as applied to this case, is based upon the notion that one who consents to the doing of an act cannot maintain an action in respect of the damage which results from that act.    It has been amplified so as to cover all cases where there is consent either express or implied to the risk to which an employé is subjected.    Before it is applied, however, it must appear that plaintiff knew and appreciated the full extent of the danger to which he was subjected, and that he voluntarily

14. ASSUMPTION OF RISK.

put himself in the way of that danger or impliedly consented to subject himself to it. See *Osborn v. London R. R.*, 21 Q. B. Div. 220; *Fitzgerald v. Paper Co.*, 155 Mass. 155 (29 N. E. 464, 31 Am. St. Rep. 537); *Mahoney v Dore*, 155 Mass. 513 (30 N. E. 366). Generally speaking full appreciation of the danger is necessary. *Ward v. Damps Kibsels Kabet* (D. C.), 136 Fed. 502; *Smith v. Baker*, A. C. (1891) 325; *Thomas v. Quartermaine*, 18 Q. B. D. W. 696; *Stomne v. Produce Co.*, 108 Iowa, 137; *Cushman v. Fuel Co.*, 116 Iowa, 618; *Carver v. Railroad Co.*, 120 Iowa, 346; *Branz v. Railroad Co.*, 120 Iowa, 406. It was for the jury to say whether the above conditions existed, and, with its finding, we should not interfere.

The question of contributory negligence was clearly for the jury. We would not be justified under the record in holding as a matter of law that plaintiff was guilty of such

15. CONTRIBUTORY NEGLIGENCE. negligence as prevents a recovery. There was another way he could have taken in going to and returning from the closet, but it was not as convenient or as much used as the one he took. He was acting when he went to the closet in an emergency, and upon his return he was justified, so a jury may have found, in taking the same path. The other way to which we have referred was obstructed and difficult to take, and, in view of what we shall say upon the question of promise to repair, it is evident that the question was for the jury. Whatever we may think of the doctrine of assumption of risk, the rule as to complaint and promise to repair is in the case by reason of the instructions given by the trial court, as has been observed in the paragraph of this opinion dealing with that branch of the case.

V. We are now brought to the question most strongly relied upon by the appellant, and that is the alleged complaint made by plaintiff of the danger and the promise said to have been made to him by defendant's employés. A complaint said to have been made early in the month of Septem-

ber preceding the accident was taken from the jury by in-
struction No. 22.  But it is claimed for plain-
tiff that on the night of the 5th of November
he made complaint to the night superintendent,
who was next in authority to one Seigel, who was manager
of the plant, and " the head of the whole business," and
that Schon, the night superintendent, promised to make
repairs.  It is also claimed, and plaintiff testified that he
went again to the third floor of the building on November
9th, and saw that the repairs had not been made.  But
he further testified that there was then a pile of lumber
there with which to make the repairs, and to put a railing
around the opening.  The opening in this third floor had
been made the latter part of August or the first part of Sep-
tember of the year in which plaintiff was injured.  Defend-
ant contends that the complaint was not made to the proper
person, that it was insufficient because it did not compre-
hend danger to the maker and for other reasons, that no
promise to repair was made on plaintiff's behalf, and that, in
any event, plaintiff was not justified in remaining in de-
fendant's employ until November 14th, in reliance upon the
promise to repair.

While the September complaint, as such, was taken
from the jury, it is so interwoven with the testimony as
to other complaints that, in a measure at least, it must be
taken into account in considering the nature of the subse-
quent ones.   Schon was night superintendent, who had
under him certain foremen and through these foremen of
from three hundred and fifty to four hundred men; and,
while his powers may not perhaps be determined from his
own declaration, he was, nevertheless, the night superin-
tendent, and was in charge of the work when the other super-
intendent was away.  When the complaint was made to him,
instead of disowning authority to do anything, Schon said,
according to the testimony:  ." I will see to that, and have
it fixed."  That complaint was made to the proper person.

16. SAFE PLACE TO WORK: complaint: to whom made: sufficiency.

See *Weber v. Kehl,* 139 Ill. 644 (29 N. E. 714); *Patterson v. R. R.,* 76 Pa. 389 (18 Am. Rep. 412); *Pieart v. R. R.,* 82 Iowa, 148; *Homestake Co. v. Fullerton,* 36 U. S. App. 32 (69 Fed. 923, 16 C. C. A. 545); *Louisville Co. v. Kenley,* 92 Tenn. 207 (21 S. W. 326).

As to the complaint itself, a jury was justified in finding that plaintiff called the attention, not only of the night superintendent, but of Maker, a foreman, to the dangerous condition of the openings. And while plaintiff did not expressly name himself as the one likely to be hurt, that does not seem to be required.

We now quote from the record (plaintiff's testimony): " On the night of the 5th of November, I spoke to Schon first about the opening. I thought about it, and remembered that was the place, and that it wasn't fixed, and I spoke to him about it. I remembered of being up there, and noticing that the first report made to Maker on the 1st of September had not been recognized, and had not been complied with; and, instead of reporting a second time to the night foreman, I reported to the superintendent." The exact language of this report is not given save by reference to the former September complaint; and, when we go to that, we find that plaintiff and Maker both understood that the danger had reference to plaintiff as well as to others. In referring to the law of this matter, we have already seen that the notice need not be in any exact form, or that it be expressly stated therein that it is for the complainant's own safety. It is sufficient if it plainly conveys the idea that a defect exists, and that the employé desires it remedied, for his own protection. Tested by this rule, the jury was justified in finding that sufficient complaint was made. Moreover should we entirely eliminate the reference to the September conversation we find that plaintiff reported the conditions to the night superintendent, and that this night superintendent promised to remedy them. In the absence of some showing that the complaint was made on behalf of

some other person, it will be presumed that it was made on behalf of the person making it, and for his own benefit. Naturally if one makes complaint to his superior of an existing situation, it will be inferred that he is making it on behalf of himself, and not for some one else.    Taking the testimony we have quoted, and a jury would be justified in finding therefrom that the complaint was on plaintiff's own behalf, and not for the benefit of some one else.    There was enough here to show that plaintiff did not consent to incur the risk.    *Yarmouth v. France,* 19 Q. B. D. 647; Mahoney v. Dore, *supra.*

The promise of Schon to repair was surely sufficient, he said " he would see to it, and have it fixed."    That plaintiff relied upon the promise, is shown by his testimony 17. Promise of heretofore quoted.    Whether. plaintiff was REPAIR: sufficiency: justified in remaining in defendant's employ re-assumption of risk. for the length of time he did after the promise was made was a question for the jury.    His conduct in this respect should be viewed by what he afterward discovered in the way of provision for making the repairs.    We cannot say, as a matter of law, that he remained so long in defendant's employ after the promise was made as that he reassumed the risk.    See, as supporting these conclusions, *Buehner v. Creamery Co.,* 124 Iowa, 445 ; *Aitchison Co. v. Lannigan,* 56 Kan. 109 (42 Pac. 343) ; *Foster v. R. R.,* 127 Iowa, 84; *Rice v. Eureka Co.,* 174 N. Y. 385 (66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585) ; *Taylor v. Star Coal Co.,* 110 Iowa, 41; *Belair v. R. R. Co.,* 43 Iowa, 662.

Unless the case be very extreme, that question is for a jury.    We think it was for a jury in this case.    These facts also have a collateral bearing upon the issue of con-
18. Same. tributory negligence although, of course, assumption of risk and contributory negligence are distinct propositions of law.    However, if a promise of repair has been made, the employé has a right to assume

that the promise will be complied with and to govern himself accordingly.

, VI. Lastly, it is argued that the verdict is excessive, and should have been reduced. It was for more than $32,000. The jury was authorized to find that, as a result of

**19. DAMAGES: personal injury: excessive verdict.** the blow to plaintiff, he was paralyzed from about the region of the small of the back down to his toes; that his bladder and the ducts leading therefrom are so affected that he cannot control his urine; that his bowels are at times uncontrollable, and at others can only be moved by injection; that he cannot dress or undress himself; that he has lost all sexual power; that he endures pain with every movement of his body; that he requires constant nursing and care. He has suffered and undoubtedly will suffer great pain, and is an object of pity to all about him. Prior to the receipt of his injuries he was a strong, vigorous, and healthy man. He was twenty-seven years of age when the accident occurred, had an expectancy of thirty-seven years, and was earning $1,100 per year. He has already expended more than $200 for doctor bills, and will require a nurse constantly during the remaining years of his life. The case has twice been tried, and each time large verdicts have been returned. In view of all these facts, and some others which the jury was authorized to find, we do not feel justified in holding that the verdict was excessive.

We have now disposed of every debatable proposition in the case, and, finding no error, the judgment must be, and it is, *affirmed,*